UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No. 4:18CR00876JAR/NCC |
| v. ) | |
| ) | |
| ASHU JOSHI, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO SUPPRESS
STATEMENTS, ADMISSIONS, AND CONFESSIONS**

Comes now, Defendant, Dr. Ashu Joshi, and moves this Court to enter an order suppressing any statements made to investigators on October 10, 2018. Defendant's statements were obtained by investigators using unduly coercive and deceptive tactics in conjunction with a lengthy custodial interview that were designed to convince the Defendant to provide a statement.

Defendant's statements to investigators, and any fruits of those statements, should be suppressed as they were obtained in violation of his rights under the Fourth, Fifth, and Sixth Amendments to the United States Constitution and the guarantees extended pursuant to *Miranda v. Arizona* 384 U.S. 436 (1966). In support of this request, Defendant submits the following.

**FACTUAL BACKGROUND**

1. Defendant, Dr. Ashu Joshi (hereinafter "Dr. Joshi") has been charged by Indictment with Count I, Production of Child Pornography, in violation of 18 U.S.C. § 2251(a); Count II, Transportation of a Minor Across State Lines, in violation of 18 U.S.C. § 2423(a) and 2; and Count III, Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2).2.

2. On October 10, 2018, investigators with the St. Louis County Police Department came to Dr. Joshi's place of employment, St. Louis University Hospital, to question him about his suspected

sexual relationship with a sixteen-year-old female, M.D.  The investigators were Detective Andrew Lucca and Federal Bureau of Investigation Special Agent Nikki Badolato.

3.	The investigators approached Dr. Joshi at a work reception area and Detective Lucca told him they needed to talk about M.D. and that he had concerns about her whereabouts.  Dr. Joshi offered to speak to them, but Detective Lucca told him he "didn't want to do this here" or words to that effect.

4.	Dr. Joshi offered to speak to the investigators in his private office, but they refused and insisted he accompany them to the police station.  He responded by asking if he could come later as he had an important lunch meeting to attend.  Dr. Joshi explained he needed to be at the meeting, and there would be lunch at the meeting.  He emphasized the important of eating lunch to the investigators and told them it was important because he suffers from metabolic syndrome which makes him prone to hypoglycemia.  Symptoms of hypoglycemia include an inability to think clearly.  The effects of lack of food and hypoglycemia are well documented.  *See* Exhibit A, Medical Journal articles on metabolic syndrome.

5.	In response to these concerns, Special Agent Badolato said "tell us who to call and we will get your schedule freed up".  Detective Lucca promised that it would only take "a couple" of hours and he would be brought back.  Ultimately, feeling he had no choice he accompanied the officers to the police station.

6.	At no time prior to the reading of *Miranda* was he told that he was under investigation for criminal allegations, or that he was a suspect.  The investigators only responded to his inquires that their purpose was to make sure M.D. "was ok".

2

7. After arriving at the police station Dr. Joshi was read a *Miranda* rights warning and waiver which he signed.

8. Dr. Joshi was interrogated for eight-hours. During the interrogation Dr. Joshi admitted to conversing with M.D. about sexual subject matter and receiving and sending her sexually explicit material. Throughout the course of their interrogation detectives repeatedly entered the interrogation room to garner Dr. Joshi's signature to search his various electronic devices.

9. Detectives locked Dr. Joshi inside the interrogation room for nearly the entirety of his eight-hour interrogation in a small windowless room. There was no clock in the interrogation room and Dr. Joshi's watch was taken from him, along with all other electronics, which prohibited him from being aware of the time or determining how long the interrogation had been ongoing.

10. Dr. Joshi asked Dr. Lucca whether he was under investigation and Detective Lucca explicitly told him "no." He asked multiple detectives he encountered during his interrogation whether he was "in trouble." The investigators responded the interrogation was just "something I have to do" and that they were "just looking" when referring to if he was in trouble when he signed a waiver for investigators to examine his electronics and home.

11. Dr. Joshi was told by investigators that his response was "just between us," when they were fully aware that the conversation was being recorded and could be used against Dr. Joshi.

12. Dr. Joshi told Detective Lucca he was starving and needed food. Yet, the interrogation lasted another three hours and Dr. Joshi was not provided with any food throughout the course of his eight-hour interrogation. Furthermore, it took investigators almost an hour to get Dr. Joshi water after one request nearly five hours into the afternoon.

13. Dr. Joshi was told that investigators were "almost done" or "wrapping up" multiple times though the questioning continued.

14. Investigators told Dr. Joshi it wasn't their choice on when he would leave because they still couldn't locate M.D. giving the impression that the information, he provided to law enforcement would be used to ensure M.D. was found safely so he could be released.

15. At the conclusion of the eight-hour interrogation Dr. Joshi was arrested, which was the intent of the investigators at the outset.

## ARGUMENT

**I.    Dr. Joshi did not voluntarily, knowingly, or intelligently waive his rights under *Miranda*.**

16. "A criminal suspect may waive the constitutional rights protected by *Miranda*. But the Government must prove by a preponderance of the evidence that Defendant's waiver was voluntary, knowing, and intelligent; that is, it must be 'the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and the suspect must have a 'full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Phillips*, 506 F.3d 685, 687 (8th Cir. 2007) (internal citation omitted) (quoting *United States v. Jones*, 23 F.3d 1307, 1313 (8th Cir. 1994)).

17. "The determination of whether an accused has knowingly and voluntarily waived his *Miranda* rights depends on all the facts of each particular case. The circumstances include the background, experience, and conduct of the accused." *United States v. Boyd*, 180 F.3d 967, 977 (8th Cir. 1999) (internal citations and quotations omitted).

18. "In considering whether a confession was voluntary, the determinative question is whether the confession was extracted by threats, violence, or promises (express or implied), such

4

that the defendant's will was overborne and his or her capacity for self-determination was critically impaired." *United States v. Pierce*, 152 F.3d 808, 812 (8th Cir. 1998). "In making this determination, courts look at the totality of the circumstances, including the conduct of the law enforcement officials and the defendant's capacity to resist pressure." *Id*.

19.     Defendant argues the statutory factors in 18 U.S.C. § 3501(b) demonstrate that his confession was not voluntarily given. "18 U.S.C. § 3501 governs the admissibility of confessions in federal prosecutions. It directs the admission of 'voluntarily given' confessions, *see* § 3501(a), and requires trial courts to consider all of the circumstances surrounding a confession when determining its voluntariness, *see* § 3501(b)." *United States v. Clarke*, 110 F.3d 612, 615 (8th Cir. 1997). Title 18 U.S.C. § 3501(b) states,

> The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsed between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

18 U.S.C. § 3501(b); *but see Dickerson v. United States*, 530 U.S. 428, 430, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000) (holding § 3501 unconstitutional insofar as it established a "a rule that the admissibility of such statements should turn only on whether or not they were voluntarily made" and not requiring law enforcement officers to read the defendant his *Miranda* rights); *United States v. Nguyen,* 250 F.3d 643, 645 (8th Cir. 2001) (post-*Dickerson* decision citing § 3501(b)'s totality-

5

of-the circumstances test to determine whether the defendant voluntarily waived his Fifth and Sixth Amendment rights).

20. The Government bears the burden of proving by a preponderance of the evidence that the Dr. Joshi waived his rights under *Miranda* and that the waiver was voluntary. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986) (citing to *Miranda*, 384 U.S. at 475).

21. Reviewing courts must look to the "totality of the circumstances surrounding the interrogation" to ascertain whether a defendant's rights were violated. *Tague v. Louisiana*, 444 U.S. 469, 471 (1980).

22. The waiver or such rights must be made voluntarily and not have been the product of intimidation, coercion, or deception. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Further, a waiver cannot be obtained based on expressed or implied promises of leniency. *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (citing *Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir. 2001).

23. The government bears the "heavy burden" to prove that the defendant voluntarily, knowingly, and intelligently waived his rights. *United States v. Jackson*, 34 F. Supp. 3d 645, 650 (M.D. La. 2014).

24. A voluntary waiver is one that is "the product of a free and deliberate choice rather than intimidation, coercion, or deception;" it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Ray*, 803 F.3d 244, 266 (6th Cir. 2015).

25. In this case, Dr. Joshi did not voluntarily, knowingly, or intelligently waive his rights under *Miranda*. Based on the *Phillips* factors and those suggested in § 3501, Dr. Joshi's waiver of his right to remain silent was involuntary and unknowingly. *Phillips*, 506 F.3d at 687; § 3501(a).

6

26.     Detective Lucca would not inform Dr. Joshi of the true nature of his investigation. He was only told it was for the purpose of determining M.D.'s whereabouts and that it was urgent. Dr. Joshi was not given a choice to speak to investigators in the privacy of his own office. Instead they insisted he come with them to a police station where his statements would be recorded, and he would be confined.

27.     Dr. Joshi informed the investigators he needed to go to a meeting, and SA Badolato responded by essentially threatening to tell other people that he was been sought for questioning by the police. Furthermore, he told the investigators that he needed to eat lunch because of his medical condition, and they assured him his detention would be brief, even though they knew it would not be.

28.     Investigators intentionally concealed the true nature of the investigation for as long as possible, in order to obtain a waiver of *Miranda*.

29.     When the investigators took Dr. Joshi away from his work for questioning, he was, in essence, arrested. However, he was not brought before a magistrate judge or state of local judicial officer "without unnecessary delay" as required under Federal Rule of Criminal Procedure 5.

30.     Under the totality of the circumstances, Dr. Joshi's statements were not the product of a voluntary, knowing and intelligent waiver. As such, the statements, and the fruits of any such statement, should be suppressed.

**II.     Dr. Joshi's post *Miranda* statements should be suppressed as the investigators continually utilized coercive and deceptive tactics on him in order to ensure he did not invoke his right to remain silent.**

31.     Dr. Joshi's post *Miranda* statements were mired by intimidation, coercion, and deception as he was constantly reminded that the alleged victim was missing, and that law

7

enforcement was soliciting information over the course of an eight-hour long interrogation to try and ensure her safety.

32. Dr. Joshi was aware the alleged victim was carrying their child, and as stated during his interrogation multiple times, he was unaware of her whereabouts. Law enforcement was aware of her pregnancy and the likelihood Dr. Joshi was the father of the child when they intimidated, coerced, and deceived him into making statements.

33. Courts have found that a vulnerable emotional state of mind mitigates against a finding that a person voluntarily waived his *Miranda* rights. Emotional distress suffered in an ongoing manner at the time of a waiver can make an individual particularly vulnerable to even the slightest bit of police coercion. *United States v. Jackson*, 34 F. Supp. 3d 645, 650 (M.D. La. 2014). A similar principal should be applied by the Court to all post *Miranda* statements to ensure that the statements remained voluntary, knowing and intelligently even after a waiver.

34. Law enforcement preyed upon Dr. Joshi's vulnerabilities and emotional distress in not knowing the whereabouts of the mother of his child. Dr. Joshi was unable to ascertain the consequences of waiving his *Miranda* rights as he sought to safely bring home the mother of his child.

35. Dr. Joshi statements to investigators were provided under coercion and were the product of deceptive tactics deployed during the course of an eight-hour interrogation in which the investigators repeatedly told Dr. Joshi they were "wrapping up" or "almost done," nevertheless the interrogation lasted for hours after these repeated statements that the interrogation was almost complete.

36. Although Dr. Joshi's *Miranda* rights were read at the station, when viewed in totality, the circumstances surrounding Dr. Joshi's post *Miranda* statements reveal a highly

8

coercive and deceptive environment that continued throughout the interrogation, one which was designed to prevent Dr. Joshi from invoking his rights.

37. Dr. Joshi spent approximately eight hours within an interrogation room on the afternoon of October 10, 2018 and was told within three hours of the interrogation beginning that the detectives were down to collecting the "last thing," while the interrogation lasted another five hours. He was denied food, which he needed due to his hypoglycemia. He was instead given false information about the nature of the investigation and the consequences of his statements.

38. Viewed in totality, the nuanced coercion and deception exerted on Dr. Joshi by investigators demonstrate a tactic meant to wear down the suspect and piecemeal information together over an extended interrogation meant to subjugate Dr. Joshi to the will of his examiners.

39. Based on the foregoing, Dr. Joshi's post *Miranda* statements should be suppressed.

**III.     All of Dr. Joshi's statements should be suppressed as the fruit of an illegal search of private conversations and images shared between Dr. Joshi and M.D.**

40. Statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search." *United States v. Yousif*, 308 F.3d 820, 832 (8th Cir. 2002). Any statement made as a result of an illegal search implicate a separate "fruits" analysis from the physical evidence seized as a result of the same search. *United States v. Rios-Uscanga*, 2017 U.S. Dist. LEXIS 68991, * 20, 2017 WL 1534746 (D. Minn. 2017).

41. The origins of the interrogation of Dr. Joshi stem from an illegal search of Dr. Joshi's confidential Facebook messages and photos, and his subsequent statements and consent to search his residence and electronic devices were the fruits of this illegal search.

9

42. Defense Counsel has filed contemporaneously with this motion a separate Motion to Suppress Evidence which outlines the Fourth Amendment violation.

43. Since Dr. Joshi's Fourth Amendment rights were violated, his statements which were obtained as a result of that violation should be suppressed as fruit of the poisonous tree.

WHEREFORE, Defendant requests an order of this Court suppressing any statements, admissions, and confessions made to investigators on October 10, 2018, and any other relief this Court deems proper.

Respectfully Submitted:

FRANK, JUENGEL & RADEFELD,
ATTORNEYS AT LAW, P.C.


By: */s/ Daniel A. Juengel*_____
DANIEL A. JUENGEL (#42784MO)
Attorney for Defendant
7710 Carondelet Avenue, Suite 350
Clayton, Missouri 63105
(314) 725-7777

### CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

Colleen Lang
United States Attorney
111 South Tenth Street
St. Louis, Missouri, 63102.

*/s/ Daniel A. Juengel*
DANIEL A. JUENGEL