UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No. 4:18CR00876JAR/NCC |
| v. ) | |
| ) | |
| ASHU JOSHI, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Comes now Counsel for Defendant, Dr. Ashu Joshi, and respectfully requests the Court to enter an order dismissing the Indictment because the charges, as applied to Defendant, are unconstitutional in that they violate the protections afforded to Defendant under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution.

Specifically, at the time of the alleged events the Defendant and the alleged victim were either in a lawful relationship or legally married. Therefore, the United States cannot criminalize a husband and wife from seeing one another and taking nude photos and videos of one another that are not shared with anyone other than themselves. In support of this motion, Defendant states as follows:

## FACTUAL BACKGROUND

1. Defendant, Dr. Ashu Joshi (hereinafter "Dr. Joshi"), has been charged by Indictment with Count I, Production of Child Pornography, in violation of 18 U.S.C. § 2251(a); Count II, Transportation of a Minor Across State Lines, in violation of 18 U.S.C. § 2423(a) and 2; and Count III, Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2). (Doc. 17). All counts alleged conduct between March 1, 2018, and October 10, 2018. (Doc. 17).

2. In sum, Dr. Joshi is charged with using alleged victim, M.D. (age 16), to create images of a sexual nature, receiving such images of M.D., and transporting her across state lines with the intent to engage in sexual activity. (Doc. 17).

3. On June 23, 2018 Dr. Joshi and M.D. were married in a private religious ceremony in the Commonwealth of Kentucky. This marriage was later recognized and validated by the Commonwealth of Kentucky on November 08, 2019, when a judge in the 27th Judicial Circuit of the Commonwealth of Kentucky, Knox County, signed an order recognizing the prior religious ceremony. *See* Exhibit A, Order.

4. Specifically, the Circuit Court Judge found and ordered that "the marriage conducted on June 23, 2018 between the parties is a valid marriage" and "that *as of* June 23, 2018 the parties are deemed married". *Id.* (emphasis added). *Id.* Additionally, the Court should be aware that Dr. Joshi and M.D. have a child together, A.J., as a result of their union. *See* Exhibit B, DNA test establishing paternity.[1]

5. The investigation against Dr. Joshi originated on August 09, 2018 when Jason Berry, a Trust & Safety Manger for social media website Facebook, was reviewing private messages exchanged between the Dr. Joshi and M.D., his wife, obtained via a surveillance algorithm. Mr. Berry conducted independent research into the identity of the Facebook profiles he was surveilling and learned that one profile belonged to Dr. Joshi, and the other to M.D.

6. Between August 09, 2018, and September 30, 2018, Mr. Berry continued to monitor communications between M.D. and Dr. Joshi. During that time Mr. Berry claims he observed 333 pictures and one video file being uploaded by M.D. to Dr. Joshi private Facebook account. The

---

[1] Exhibit B will be filed as a sealed exhibit to protect the private information of the child.

pictures and video were of a private nature and contain some sexual content. Some of the images were accompanied with private messages between M.D. and Dr. Joshi. Over this same period, Mr. Berry also claims he observed 144 images being uploaded from Dr. Joshi to M.D. One of the images contains a "still" from video chat between M.D. and Dr. Joshi.

7. None of the pictures or video were publicly shared or accessible to other users.

8. The images and videos from Facebook's investigation is the Government's case-in-chief. Thus, despite the enlarged time period in the Indictment, the images and videos all come after August 09, 2018, a time period that Dr. Joshi and M.D. were legally married.

9. The physical relationship between Dr. Joshi and M.D. took place in Kentucky, which until July 14, 2018, permitted 16-year-olds to consent to sexual activity with any adult. *See* Kentucky Revised Statue § 510.020 (2017) and § 510.020 (2018).

## LEGAL AUTHORITY & ARGUMENT

**I.  The Indictment should be dismissed as the charges contained therein "as applied" to Dr. Joshi are unconstitutional since he was married to M.D. at the time of the offenses.**

10. A law may be challenged as unconstitutional in two ways, "as applied" or "facially". *See e.g. Ada v. Guam Soc. Of Obstetricians & Gynecologists*, 506 U.S. 1011, 1012-13 (1993) (Scalia, J. dissenting).

11. An as-applied challenge asks the court to declare the statute unconstitutional "on the facts of the particular case". *United States v. Adams*, 914 F.3d 602 (8th Cir. 2019) (citing *Sanjour v. E.P.A.*, 56 F.3d 85, 92 n. 10 (D.C. Cir. 1995)). The as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular

3

circumstances deprived that person of a constitutional right". *Id*. (citing *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010)).

12. Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights. *See Duncan* v. *Louisiana*, 391 U.S. 145, 147-149 (1968). In addition, these "liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs." *See Obergefell v. Hodges,* 135 S.Ct. 2584, 2598 (2015); *See*, *e.g., Eisenstadt* v. *Baird*, 405 U.S. 438, 453 (1972); *Griswold* v. *Connecticut*, 381 U.S. 479, 484-486 (1965).

13. The right to marry is protected by the Constitution. *Obergefell*, 135 S.Ct. at 2598. In *Loving* v. *Virginia*, 388 U.S. 1, 12, (1967), The Supreme Court held marriage is "one of the vital personal rights essential to the orderly pursuit of happiness by free men." Over time and in other contexts the Supreme Court has reiterated that the right to marry is fundamental under the Due Process Clause. *See*, *e.g., Zablocki* v. *Redhail*, 434 U.S. 374, 384 (1978), *Turner* v. *Safley*, 482 U.S. 78, 95 (1987); *M. L. B.* v. *S. L. J.*, 519 U.S. 102, 116 (1996); *Cleveland Bd. of Ed.* v. *LaFleur*, 414 U.S. 632, 639-640 (1974); *Griswold*, 381 U.S at 486; *Skinner* v. *Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942); *Meyer* v. *Nebraska*, 262 U.S. 390, 399 (1923).

14. In *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984), the Supreme Court recognized under the First Amendment a right to intimate association that allows individuals to "enter into and maintain certain intimate human relationships [without] undue intrusion by the State." The Court included personal affiliations covered under the First Amendment including

4

"those that attend the creation and sustenance of a family-marriage, childbirth, the raising and education of children, and cohabitation with one's relatives". *Id.* at 619-20.

15. The Supreme Court has recognized a certain right of intimate association reasoning that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme". *Id.* at 617-18.

16. The Supreme Court has further recognized that married couples are entitled to privacy in the conduct of their most intimate relations. *See generally Eisenstadt v. Baird*, 405 U.S. 438 (1972) ("If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child"); *Skinner*, 315 U.S. at 541 ("Marriage and procreation are fundamental to the very existence and survival of the race").

17. The Fourth Amendment protects individual privacy against governmental intrusion. *Katz v. United States,* 389 U.S. 347, 350 (1967). In comparison, the Supreme Court has held that the Ninth Amendment encompasses a broader right to privacy for individuals that is not included under the Fourth Amendment. *See generally Griswold v. Connecticut*, 381 U.S. 479 (1965).

18. In this case, the Government is attempting to criminalize Dr. Joshi's conduct with his wife, conduct that is entirely legal due to their legal status as man and wife.

19. Any images or videos or conversations between them are wholly protected by the First Amendment.

5

20.     Any evidence that Dr. Joshi had any physical relationship with M.D. prior to their June 23, 2018 marriage is covered under Kentucky law.  Thus, the entire relationship between Dr. Joshi and M.D. was legal insofar as they were either lawfully engaging in consensual sexual activity and/or married as of June 23, 2018.  Additionally, any pictures or videos created after their marriage were done so legally.

21.     As stated above, the Supreme Court has long recognized that marriage is sacred and should be protected, and that individuals have a right to privacy in that marriage free from government intrusion.

## II.     The Indictment must be dismissed as the charges contained therein are facially unconstitutional because they do not allow for an exception for marriage.

22.     A law may be "invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010) (citing *Washington State Grange v. Washington State Republican Party*, 128 S. Ct. 1184 (2008).

23.     Without allowing for a marriage defense the statute overbroadly criminalizes legal conduct between married individuals.  There are several situations in which any one of these statutes may apply to married individuals.  For example, if there is no defense of marriage, a married 18-year-old servicemember deployed overseas engaging in sexual videos, photo sharing, or chats with his 16-year-old spouse would be guilty of producing, receiving, or possessing child pornography.  Certainly, this is not the intent of the legislature.  A 21-year-old man married to his 17-year-old wife who videotapes or takes pictures of their private sexual encounters within the confines of their bedroom would be guilty of producing and possessing child pornography.

24. Concerns about wrongfully prosecuting married individuals for lawful conduct have led many states to create exceptions or affirmative defenses for marriage in either the child pornography and/or sex offense statutes. *See* Cal. Pen. Code § 311.2(f) (West) (stating that child pornography offenses do not apply to lawful conduct between spouses when one is under the age of 18); Mich. Comp. Laws Ann. § 750.145c (West) (stating that it is an affirmative defense to a child pornography offense when the child is emancipated by law); *See also* 13 V.S.A. § 3252(a)(3) (marriage is a defense to a sexual act involving a minor); Kan. Stat. Ann. § 21-5506 (allowing marriage as an affirmative defense to the crime of Indecent Liberties with a Child); N.C. Gen. Stat. Ann. § 14-190.13 (defining minors, for the purposes of sexual offenses, as a person less than 18 who is not married).

25. Without a specified marriage defense, the statutes charging Counts I, II, and III are unconstitutionally overbroad on their face and must be struck down.

26. The statutes contained in the Indictment are facially unconstitutional and their application to Dr. Joshi is unconstitutional, thus the Indictment must be dismissed.

**III. The Indictment should be dismissed as the charges contained therein "as applied" to Dr. Joshi are unconstitutional because Dr. Joshi's conduct did not affect interstate commerce.**

27. Dr. Joshi's individual conduct falls outside the class of activity properly regulated by Congress because he did not purchase, trade, sell or barter the self-generated pornography, nor did he have any intention to do so.

28. For Congress to regulate a class of activities, it must be proven that the activity substantially affects interstate commerce. U.S. Const. Art. I, § 8, Cl. 3; *United States v. Lopez,* 514 U.S. 549, 558-59 (1995). The Supreme Court has identified three broad categories of

7

activity that Congress may regulate pursuant to the Commerce Clause: (1) the channels of interstate commerce, (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, and (3) activities that substantially affect interstate commerce. *Id*.

29. The activity in question must be "some sort of economic endeavor." *United States v. Morrison*, 529 U.S. 598, 611 (2000). Whether an activity is one that substantially affects interstate commerce is determined by focusing on four factors in particular: (1) whether the regulated activity is economic in nature; (2) whether the statute contains an express jurisdictional element which limits its application to activities with "an explicit connection with or effect on interstate commerce"; (3) whether there are congressional findings about the regulated activity's effects on interstate commerce; and (4) whether the connection between the activity had a substantial effect on interstate commerce is attenuated. *Morrison*, 529 U.S. at 610-13.

30. The Eighth Circuit has upheld the constitutionality of § 2251(a) and other child pornography provisions based on their express jurisdictional elements requiring that interstate materials have been used in the production of the pornography. *United States v. Mugan*, 441 F.3d 622 (8th Cir. 2006) (examining the nexus between the offenses of producing child pornography and the national marketplace for such images).

31. However, the focus on the constitutional analysis largely stems from whether it is appropriate for Congress to regulate child pornography under the Commerce Clause due to the connection between child pornography generally and the illegal market for such material. *Id*.; *see also United States v. Morales-De Jesus*, 372 F.3d 6, 17 (1st Cir. 2004); *United States v. Holston*, 343 F.3d 83, 88-90 (2d Cir. 2003); *United States v. Kallestad*, 236 F.3d 225, 228-29 (5th Cir. 2000).

32. Courts have recognized however that when the conduct at issue was non-economic and non-commercial in nature a court should engage in an "as applied" inquiry as to the constitutionality of the statute to a particular defendant. *Morales-De Jesus*, 372 F.3d at 17 (holding that the nature of the relationship between the minor and defendant may raise constitutional privacy concerns that the child pornography at issue is "not within the sphere of activity identified by Congress as the basis for its exercise of power under the Commerce Clause").

33. In this case, the "child pornography" in question is a memorialization of sexual activities between a husband and wife, not images or videos that are for the purpose of sharing with others in the marketplace. The fact that some computer component was used in the creation or storage of these issues, a component that may or may not have traveled in interstate commerce, is outweighed by the larger privacy issue at stake. Since the facts of this case do not facially demonstrate any other connection to interstate commerce (such as child pornography being shared over the Internet) there is no federal nexus for the Commerce Clause to be applied.

34. Therefore, due to the lack of commerce implications here the Indictment should be dismissed as unconstitutional "as applied" to Dr. Joshi.

**IV.    Count I of the Indictment must be dismissed as the charges contained therein "as applied" to Dr. Joshi are unconstitutional because Dr. Joshi's conduct was not "for the purpose" of producing or possessing visual depictions of a minor engaged in sexually explicit conduct.**

35. 18 U.S.C. § 2251 requires the Government to prove that the photographs were taken "for the purpose of" producing visual depictions of a minor engaged in sexually explicit conduct.

*See also* Eighth Circuit Jury Instructions, 6.18.2251(a) Sexual Exploitation of a Child by a Person Other Than Parent or Guardian.

36. In *United States v. Street*, 531 F.3d 703, 708 (8th Cir. 2008) the Eighth Circuit noted that evidence that a defendant and the minor were involved in a mutual relationship was relevant to the defense's attempt to refute the government's showing that the photographs were taken "for the purpose of" producing visual depictions of a minor engaged in sexually explicit conduct.

37. In *United States v. Ortiz-Graulau*, 397 F.Supp.2d 345, 349 (D.P.R. 2005), the court noted that Congress might not have intended to criminalize a husband and wife taking intimate photographs of each other for private use and that evidence of an individual's lawful marriage to a minor is relevant to the court's inquiry.

38. Here, the photographs were not taken for any purpose other than memorializing the relationship between husband and wife. As such, the Government cannot prove that the images pertaining to Count I was taken "for the purpose of" producing child pornography. Therefore, Count I should be dismissed.

**V. Count II of the Indictment must be dismissed as the charges contained therein "as applied" to Dr. Joshi are unconstitutional because Dr. Joshi did not transport the minor across state lines with the intent to engage in criminal sexual activity.**

39. 18 U.S.C. § 2423(a) requires the Government to prove that Dr. Joshi transported M.D. across state lines with the intent to engage in "criminal sexual activity". *See also* Eighth Circuit Jury Instructions, 6.18.2423A Transportation of a Minor to Engage in Criminal Sexual Activity.

10

40. Until July 14, 2018, Kentucky Revised Statute § 510.020 permitted 16-year-old individuals to consent to sexual relationships with adults. *See* KRS § 510.020 (2017). The law was revised on July 14, 2018, to state that a 16-year-old cannot consent if the person is ten or more years older than the individual. *Compare* KRS § 510.020 (2018). Dr. Joshi and M.D. were married on June 23, 2018. Ex A.

41. Whether the Government approves of the relationship or not, at the time Dr. Joshi and M.D. entered a romantic and physical relationship, the relationship was by all accounts legal in the State of Kentucky. That relationship was validated on June 23, 2018 when Dr. Joshi and M.D. were married.

42. It is worth noting that the Supreme Court has analyzed the age of consent from all fifty states and found that the age of consent is sixteen years old in 32 states. *See Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1573 App. (2017) (holding that the federal definition of sexual abuse of a minor under 8 U.S.C. § 1101(a)(43)A) requires the age of the victim to be less than 16).

43. Since the relationship between Dr. Joshi and M.D. was entirely legal over the duration of all the charged time period, Count II of the Indictment "as applied" to Dr. Joshi is facially unconstitutional and should be dismissed.

**VI.   Conclusion**

44. The Government's attempts to criminalize conduct that flows from an entirely legal relationship is an infringement on Dr. Joshi's First, Fourth, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution.

11

45. The relationship between Dr. Joshi and M.D. was entirely legal.  Their subsequent marriage ratifies their union and entitles them to the highest privacy rights individuals can have. Any attempt by the Government to criminalize lawful activities between a husband and wife is an afront to the Constitution and our core beliefs in liberty.

46. Therefore, the statutes by which Dr. Joshi has been charged are unconstitutionally overbroad and facially overbroad as described herein and the charges should be dismissed.

WHEREFORE, for the foregoing reasons, Defendant respectfully requests the Court to enter an order dismissing the entire Indictment, with prejudice, and grant any other relief the Court deems just and proper.

        Respectfully submitted,

        FRANK, JUENGEL & RADEFELD,
        ATTORNEYS AT LAW, P.C.

        By */s/ Daniel A. Juengel*
        DANIEL A. JUENGEL (#42784MO)
        Attorney for Defendant
        7710 Carondelet Avenue, Suite 350
        Clayton, Missouri 63105
        (314) 725-7777

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

Colleen Lang
Robert Livergood
Asst. United States Attorneys
111 South Tenth Street, 20th Floor
St. Louis, Missouri, 63102

        */s/ Daniel A. Juengel*
        DANIEL A. JUENGEL