## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) Cause No. 4:18CR00876JAR/NCC |
| v. | ) |
| ASHU JOSHI, | ) |
| Defendant. | ) |

### DEFENDANT'S MOTION TO COMPEL DISCOVERY,
### OR IN THE ALTERNATIVE,
### MOTION FOR SUBPOENA PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 17(c)

Comes now, Counsel for Defendant, Dr. Ashu Joshi, and respectfully requests the Court enter an order compelling the Government to disclose documents, information, and other materials related to Facebook's use of their electronic surveillance program, as well as, documents, information, and other materials related to Facebook's relationship with the National Center for Missing and Exploited Children (NCMEC) and its partners. This request includes:

1) The name of the computer software program Facebook utilized during the online investigation in this case.

2) The length of time the software program has been utilized by Facebook.

3) Whether Facebook was provided any information or data (such as hash values, SHA1 values, etc.) from the National Center for Missing and Exploited Children (NCMEC) to operate the software, and whether they receive periodic updates from NCMEC.

4) Copies of any user manuals, operation manuals, instruction manuals, documentation help, policies and procedures, or other technical manuals related to the software program, including whether there have been any updates or changes to these materials and who provides these updates.

5) Information on whether the program has been updated, and if so, the reason for the updates and whether law enforcement or private companies or institutions funded by the Government provide these updates.

6) Information pertaining to whether the software was provided to Facebook by the Government or NCMEC or was funded partially through any Government funds/grants.

7) Any internal compliance memorandum from Facebook explaining how the program is to be used and why it is necessary.

8) A complete copy of Facebook's "investigative file" pertaining to this matter.

9) The curriculum vitae/resume of Jason Berry, Trust & Safety Manager for Facebook, including but not limited to, whether Mr. Berry has any prior law enforcement training.

10) Information pertaining to whether Jason Berry has ever been given training from NCMEC or other law enforcement agencies, including but not limited to the national Internet Crimes Against Children (ICAC) Taskforce, in order to serve in his capacity as Trust & Safety Manager.

11) Copies of any policies, procedures, or guidance given by Facebook to employees on how to conduct online child sexual abuse material investigations, including but not limited to, any written information provided to Facebook employees on how to interact with NCMEC.

12) Changes in any policies and procedures by Facebook over the last five years since the legal issue in *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016) arose, and who suggested those changes.

13) Information on any training Facebook employees undergo in order to be able to investigate child sexual abuse material and child pornography, including internal training materials, or training materials provided by NCMEC, ICAC, or any other law enforcement agency.

14) Copies of any memoranda, letters, orders, or other internal documents from or to Facebook pertaining to their cooperation with the government in the identification of potential child pornography images.

15) Copies of any partnership agreements or documents pertaining to Facebook's partnership with the non-profit organization called Thorn (Thorn.org) which provides Facebook with guidance on being compliant with NCMEC and Government practices.

16) Copies of the information provided to NCMEC by Facebook pertaining to this

        investigation in the original format it was provided with any necessary child pornography image redactions.

17)    Copies of any NCMEC internal memorandum or other documents discussing changes in policies, practices, or procedures in response to the decision in *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016).

18)    A list of all training seminars or presentations made by NCMEC where Facebook compliance staff were present.

19)    Copies of any partnership agreements or documents pertaining to NCMEC's partnership with Thorn (Thorn.org).

The items requested constitute discovery that is material to preparing the defense of this case. Images and other evidence obtained by Facebook's use of their electronic surveillance tool forms a basis for the search of the Defendant's private message and subsequent search warrants in this matter. Defendant has raised the issue that Facebook, when utilizing this surveillance tool, and by engaging in subsequent searches is a government actor and thus bound by the limitations of the Fourth Amendment. Additionally, Defendant has made similar claims pertaining to NCMEC. Without being provided the requested discovery, Defense Counsel is unable to adequately present a case to establish whether Facebook and NCMEC were acting on behalf of the Government, which if true, triggers a violation of the Fourth Amendment. The discovery requested is material to the Defendant's Motion to Suppress Evidence. The caselaw and arguments related to this point have been raised in Defendant's Motion to Suppress Evidence. (Doc. #117). In support of this motion, Defendant states as follows:

## **FACTUAL BACKGROUND**

1.    Defendant, Dr. Ashu Joshi (hereinafter "Dr. Joshi"), has been charged by Indictment with Count I, Production of Child Pornography, in violation of 18 U.S.C. § 2251(a);

3

Count II, Transportation of a Minor Across State Lines, in violation of 18 U.S.C. § 2423(a) and 2; and Count III, Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2).

2. On August 09, 2018, Jason Berry, a Trust & Safety Manager for social media website Facebook, was reviewing private messages exchanged between the Dr. Joshi and another Facebook user, M.D., the Defendant's wife, obtained via a surveillance algorithm. Mr. Berry conducted independent research into the identity of the Facebook profiles he was surveilling and learned that one profile belonged to Dr. Joshi, and the other to M.D. a sixteen-year-old female.

3. Between August 09, 2018, and September 30, 2018, Mr. Berry continued to monitor communications between the married couple. During that time Mr. Berry claims he observed 333 pictures and one video file being uploaded by M.D. to Dr. Joshi's private Facebook account. The pictures and video were of a private nature and contain sexual content. Some of the images were accompanied with private messages between M.D. and Dr. Joshi. Over this same period, Mr. Berry also claims he observed 144 images being uploaded from Dr. Joshi to M.D. One of the images contains a "still" from video chat between M.D. and Dr. Joshi.

4. None of the pictures or video were publicly shared or accessible to other users.

5. Dr. Joshi and M.D. were married at the time this material was shared on Facebook. See Defendant's Motion to Dismiss (Doc. #118).

6. Despite observing this activity, Facebook did not suspend or terminate Dr. Joshi's account.

7. On October 5-6, 2018, Mr. Berry forwarded the results of his surveillance to the National Center for Missing & Exploited Children (NCMEC). NCMEC is a private non-profit organization which is obligated under federal statute to maintain a "tip line", and a duty to

investigate and inspect suspected child pornography. 18 U.S.C. § 2258A and 42 U.S.C. § 5773(b). When an electronic service provider (ESP) gives information about suspected child pornography activity to NCMEC it is known as a "cyber tip". Cyber tips are generally forwarded on by NCMEC to law enforcement. NCMEC generated four Cyber Tips related to Mr. Berry's investigation, #41196177, #41222737, #41246874, and #41249019.

8.  Once NCMEC received the flagged files and conversations, Courtney Holmes, a NCMEC analyst, took the file and opened it and reviewed its contents. Ms. Holmes utilized software to determine the "geo-location" of the IP address so that it could assist law enforcement in identifying the suspect. The geo-location for Dr. Joshi was determined to be in the Eastern District of Missouri, while M.D.'s IP address was in Bowling Green, Kentucky. Ms. Holmes also conducted an extensive investigation into the identity of Dr. Joshi, including obtaining information on his medical license, employment history, residential history, telephone usage, and social media usage.

9.  After obtaining this information, Ms. Holmes forwarded the Cyber Tips onto the Missouri Internet Crimes Against Children Taskforce, and the Kentucky State Police. Investigators with the St. Louis County Police Department reviewed the Cyber Tips and the contents of those tips.

10. At no time did Facebook, NCMEC, or local investigators seek out a search warrant, Grand Jury subpoena, or investigative subpoena to view the contents of those communications that comprise the Cyber Tips.

11. On October 10, 2018, investigators with the St. Louis County Police Department, using the information obtained from this warrantless surveillance, interviewed Dr. Joshi. During

the interview Dr. Joshi admitted to conversing with M.D. about sexual subject matter and receiving and sending her pornographic material. Investigators also allegedly obtained Dr. Joshi's "consent" to seize his electronic devices and cellular telephone. The consent was later revoked.

12. On October 16, 2018, Special Agent David Rapp of the Federal Bureau of Investigation, working in conjunction with the St. Louis County Police Department, obtained a search warrant for Dr. Joshi and M.D.'s Facebook account information. The search warrant requested the entire contents of the Facebook profiles, including (but not limited to) identifiers, activity logs, posts, group membership, "friends" lists, "check in" information, IP logs, search history, and all private messages and call history.

13. On December 18, 2018, Special Agent Rapp applied for and obtained a search warrant for the computers, cellphone, and other electronic devices taken from Dr. Joshi and Dr. Joshi's residence. Information obtained from those searches will be utilized against Dr. Joshi at trial.

14. On December 9, 2019, the Government responded to Defendant's Motion to Suppress Evidence. (Doc. #149). In their response, the Government contends that Facebook is a private actor and is in no way tied to NCMEC or law enforcement. The Government's arguments rely on Facebook being a "third-party" and not acting at the behest of the Government, a premise Defendant contends is false.

15. Based on this response, Defense Counsel requested from the Government via discovery letter the information listed above. (Letter Ex. A)

16. The Government has preliminarily responded that Facebook is a private company, everything in the Government's possession from Facebook and NCMEC has been turned over to

6

Defendant, and the Government believes the requested materials are not material to preparing the defense.  (Letter Ex. B)

17. Therefore, Defendant seeks an order compelling the Government to produce the requested items/information, or in the alternative, for issuance of a subpoena to Facebook and NCMEC for the items/information, or in the alternative, a subpoena for Facebook and NCMEC pursuant to Federal Rule of Criminal Procedure 17(c).

## LEGAL AUTHORITY

18. This request is being made pursuant to Federal Rule of Criminal Procedure 16 as well as *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

19. Federal Rule of Criminal Procedure 16 states that a criminal defendant has a right to inspect all documents, data, or tangible items within the Government's "possession, custody, or control" that are "material to preparing the defense".  *See* Fed. R. Crim. P. 16(a)(1)(E). Discovery related to the constitutionality of the search and seizure is encompassed by Rule 16(a)(1)(E).  *United States v. Soto-Zuniga*, 837 F.3d 992, 1000-01 (9th Cir. 2016).

20. Courts have consistently held that evidence is "material" if it is "helpful" to the development of a possible defense.  In *Brady v. Maryland*, the Supreme Court ruled that the suppression by the prosecution of evidence favorable to the accused, upon request for disclosure by the accused, violates due process.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The Supreme Court further expanded an accused's rights to evidence held by the Government in *Giglio v. United States* to include evidence that could be used to impeach Government witnesses.  *Giglio v. United States*, 405 U.S. 150 (1972).

7

21. The Eighth Circuit, following *Brady* and *Giglio*, has held that information is considered "material" if it is "helpful to the defense." *United States v. Vue*, 13 F.3d 1206, 1208 (8th Cir. 1994).

22. "The government cannot take a narrow reading of the term 'material' in making its decisions on what to disclose under Rule 16. Nor may it put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation." *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005).

23. The materiality hurdle is not intended to be a high one. "Even inculpatory evidence, once disclosed by the government, is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence." *United States v. Marshall*, 132 F.3d 63, 67, 328 U.S. App. D.C. 8 (D.C. Cir. 1998).

24. A defendant must make a showing of materiality and more than a mere conclusory allegation that the requested information is material to preparation of the defense. *United States v. Krauth*, 769 F.2d 473, 476 (8th Cir. 1985). However, the defendant need only show some abstract logical relationship to the issues in the case." *United States v. Lloyd*, 992 F.2d 348, 351, 301 U.S. App. D.C. 186 (D.C. Cir. 1993).

## ARGUMENT

**I.     The requested materials are in the possession of the Government and are material to the defense of this case.**

25. In Defendant's Motion to Suppress Evidence, Defendant explains how Facebook and NCMEC are government actors. (Doc. #117). Proof of Facebook and NCMEC's collusion

8

with the Government can be demonstrated through the requested discovery.  Therefore, the only remaining question is whether the requested discovery is material or not.

26. "Whether a private party should be deemed an agent or instrument of the government for Fourth Amendment purposes necessarily turns on the degree of the government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances." *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010) (quoting *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 613-14 (1989).  In evaluating agency in the Fourth Amendment context, the Eighth Circuit has focused on three relevant factors: "[1] whether the government had knowledge of and acquiesced in the intrusive conduct; [2] whether the citizen intended to assist law enforcement or instead acted to further his own purposes; and [3] whether the citizen acted at the government's request." *Id*.  A statutory or regulatory scheme that clearly compels a private actor to take specific steps that further an enforcement goal will turn a private entity into a law enforcement instrument for Fourth Amendment purposes. *Skinner*, 489 U.S. at 615-16.  Even where the government has not explicitly compelled a private entity to perform a search, its "encouragement, endorsement, and participation" in a search may rise to a level that implicates the Fourth Amendment. *Skinner*, 489 U.S. at 615-16.

27. Here, Defendant does allege that the requested discovery will reveal the sort of official regulatory features that the Supreme Court in *Skinner* held were searches of railroad employees that were not primarily the result of private initiative.  In this way, the instant case is distinguishable from *United States v. Stevenson*, 727 F.3d 826, 831-32 (8th Cir. 2013) where no such argument was made.

9

28.     Given that this discovery will establish that the Government is working in concert with Facebook and NCMEC, and that Facebook is largely undertaking their efforts with "encouragement, endorsement, and participation" from the Government the requested discovery is most definitely material to the defense of this case. If this "encouragement, endorsement, and participation" by the Government is proven, then Defendant's Fourth Amendment rights have been violated and the evidence that flows from that violation should be suppressed.

29.     Therefore, the Court should order the Government to obtain and disclose the requested materials from their law enforcement partners, Facebook and NCMEC.

**II.    If the Court finds the requested information/items are not in the possession of the Government, a subpoena to Facebook and NCMEC is warranted under Rule 17(c).**

30.     In addition to Rule 16, Defendant asks the Court to treat his Motion to Compel as a request for a subpoena under Federal Rule of Criminal Procedure 17(c).

31.     A defendant may still be able to obtain materials not discoverable under Rule 16 by using Rule 17(c), "so long as they are evidentiary." *United States v. Hardy,* 224 F.3d 752, 755-56 (8th Cir. 2000) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 219 (1951)). In order to obtain a subpoena under Rule 17(c) the moving party must show that the subpoenaed document is (1) relevant, (2) admissible, and (3) has been requested with adequate specificity. *See United States v. Nixon*, 418 U.S. 683, 700 (1974).

32.     In this case, the materials requested herein are relevant for all the reasons discussed above with respect to materiality. There is no dispute that the materials would be admissible for the purposes of a motion hearing, and the request is very specific in what

10

Defendant seeks.  Therefore, Defendant has demonstrated that his request meets the requirements of Rule 17(c) and his request for a subpoena should be granted on those grounds.

33. Here again, the instant case is distinguishable from *United States v. Stevenson*, 727 F.3d 826, 831-32 (8th Cir. 2013) in that Defendant does contend that the requested discovery will reveal that Facebook's action were not the result of private initiative but instead done at appease and satisfy the Government's interest in identifying and stopping child pornographers. More importantly, the discovery requests are not vague but rather targeted at very specific aspects of Facebook's and NCMEC's cooperation with the Government such as the operation of the electronic surveillance system utilized, the directives and training given to the Facebook investigators, specific policy changes made as a result of *United States v. Ackerman*, and the organizations mandates to work with "compliance" agencies such as Thorn.org.

34. For all these reasons, if the Court does not order the Government to disclose the material discovery, the Court should issue a subpoena to Facebook and NCMEC pursuant to Federal Rule of Criminal Procedure 17(c) to obtain the information and documents.

35. Denial of these requests will violate the Defendant's right to due process under the 5th Amendment to the United States Constitution and will also violate his right to compulsory process under the 6th Amendment and ultimately will deny him the right to a fair trial and effective assistance of counsel.

WHEREFORE, for the foregoing reasons, Defendant respectfully requests the Court to enter an order compelling the Government to disclose all discovery relating to:

1)  The name of the computer software program Facebook utilized during the online investigation in this case.

2)  The length of time the software program has been utilized by Facebook.

3) Whether Facebook was provided any information or data (such as hash values, SHA1 values, etc.) from the National Center for Missing and Exploited Children (NCMEC) to operate the software, and whether they receive periodic updates from NCMEC.

4) Copies of any user manuals, operation manuals, instruction manuals, documentation help, policies and procedures, or other technical manuals related to the software program, including whether there have been any updates or changes to these materials and who provides these updates.

5) Information on whether the program has been updated, and if so, the reason for the updates and whether law enforcement or private companies or institutions funded by the Government provide these updates.

6) Information pertaining to whether the software was provided to Facebook by the Government or NCMEC or was funded partially through any Government funds/grants.

7) Any internal compliance memorandum from Facebook explaining how the program is to be used and why it is necessary.

8) A complete copy of Facebook's "investigative file" pertaining to this matter.

9) The curriculum vitae/resume of Jason Berry, Trust & Safety Manager for Facebook, including but not limited to, whether Mr. Berry has any prior law enforcement training.

10) Information pertaining to whether Jason Berry has ever been given training from NCMEC or other law enforcement agencies, including but not limited to the national Internet Crimes Against Children (ICAC) Taskforce, in order to serve in his capacity as Trust & Safety Manager.

11) Copies of any policies, procedures, or guidance given by Facebook to employees on how to conduct online child sexual abuse material investigations, including but not limited to, any written information provided to Facebook employees on how to interact with NCMEC.

12) Changes in any policies and procedures by Facebook over the last five years since the legal issue in *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016) arose, and who suggested those changes.

13) Information on any training Facebook employees undergo in order to be able to investigate child sexual abuse material and child pornography, including internal training materials, or training materials provided by NCMEC, ICAC, or any other law enforcement agency.

14) Copies of any memoranda, letters, orders, or other internal documents from or to Facebook pertaining to their cooperation with the government in the identification of potential child pornography images.

15) Copies of any partnership agreements or documents pertaining to Facebook's partnership with the non-profit organization called Thorn (Thorn.org) which provides Facebook with guidance on being compliant with NCMEC and Government practices.

16) Copies of the information provided to NCMEC by Facebook pertaining to this investigation in the original format it was provided with any necessary child pornography image redactions.

17) Copies of any NCMEC internal memorandum or other documents discussing changes in policies, practices, or procedures in response to the decision in *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016).

18) A list of all training seminars or presentations made by NCMEC where Facebook compliance staff were present.

19) Copies of any partnership agreements or documents pertaining to NCMEC's partnership with Thorn (Thorn.org).

and/or issue a subpoena for the requested items pursuant to Federal Rule of Criminal Procedure 17(c) and grant any other relief the Court deems necessary.

        Respectfully submitted,

        FRANK, JUENGEL & RADEFELD,
        ATTORNEYS AT LAW, P.C.


By */s/ Daniel A. Juengel*
    DANIEL A. JUENGEL (#42784MO)
    Attorney for Defendant
    7710 Carondelet Avenue, Suite 350
    Clayton, Missouri 63105
    (314) 725-7777

**CERTIFICATE OF SERVICE**

I hereby certify that on January 08, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

Colleen Lang
Robert Livergood
Asst. United States Attorneys
111 South Tenth Street, 20th Floor
St. Louis, Missouri, 63102

>                     */s/ Daniel A. Juengel*
>                     DANIEL A. JUENGEL