UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18CR0876 JAR |
| | ) | |
| ASHU JOSHI, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT.**

Comes now the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Colleen Lang, Assistant United States Attorney for said district, and files its Response to Defendant's Motions to Dismiss the Indictment, Doc. #118.

## I.  INTRODUCTION

Defendant moves to dismiss the indictment in this case on the grounds that the defendant and the minor child victim were either "in a lawful relationship or legally married." Doc. #118.

The defendant's motion to dismiss the indictment should be denied as the indictment is sufficient on its face and there is no marriage defense to the crimes charged against the defendant. Finally, it appears that the defendant and the victim were married under false pretenses, and thus, the marriage is fraudulent.

## II. FACTUAL BACKGROUND[1]

A.  Cyber-Tips Reported to Law Enforcement.

---

[1] The background and factual summary information provided is intended as a general guide to aid the Court.   It is not intended as a comprehensive statement of the government's case.

On October 9, 2018, Sargent Adam Kavanaugh received notice from the Bowling Green, Kentucky Police Department concerning four (4) cyber-tips from the National Center for Missing and Exploited Children (hereafter "NCMEC"). The Bowling Green Police Department was seeking assistance in a case they were investigating involving the aforementioned cyber-tips and a sixteen-year old child by the name of "M.D." The cyber-tips had been forwarded to NCMEC from Facebook. NCMEC received the cyber-tips on October 5 and 6, 2018. Sgt. Kavanaugh received access to and viewed the four (4) cyber-tips. The cyber-tips showed that M.D. and an adult male named Ashu Joshi had been exchanging child pornography photographs of M.D. via Facebook messenger. Also in the cyber-tips provided by Facebook, it is evident that Ashu Joshi is requesting M.D. to take photographs of her genitals and send it to him over Facebook messenger[2].

In total, Facebook had flagged and sent to NCMEC 450 images of child exploitation material from the defendant and the victim's Facebook accounts.

On October 10, 2018, Sgt. Kavanaugh contacted Det. Buss at the Bowling Green Police Department and learned that the Bowling Green Police had positively identified M.D. and Ashu Joshi. Det. Buss told Sgt. Kavanaugh that Ashu Joshi was a forty-seven year old adult male living in St. Louis County, Missouri. The detectives had identified M.D. as a sixteen-year old female student at high school in Bowling Green, but she had been recently pulled out of that school.

B.  <u>Defendant's Confession.</u>

On October 10, 2018, FBI Special Agent Nikki Badolato and Detective Andrew Lucca

---

[2] Facebook Messenger is an application available to Facebook users, which allows them to have written text conversations between two or more people via the Facebook platform.

responded to SLU Hospital to locate and interview Ashu Joshi. Ashu Joshi worked at the hospital. SA Badolato and Det. Lucca met the defendant, Ashu Joshi, at the security office. He was transported back to the St. Louis County Police Department Headquarters and placed in an interview room at 12:32 p.m. Det. Lucca began the interview by reading the defendant his *Miranda* rights, defendant stated he understood his rights and was willing to speak with Det. Lucca. Defendant told Det. Lucca that he met M.D. through her mother and knew she was only sixteen-years old. The defendant admitted that M.D. and himself had exchanged "many, many" naked photographs of M.D. over Facebook messenger. The defendant also admitted to taking photographs of M.D. in which she is nude and directing her to take photographs of herself in a lascivious display of her genitals. Defendant admitted he has a Facebook account in his name, Ashu Joshi, and Det. Lucca explained to him why that account is now suspended[3]. Det. Lucca showed the defendant the images and chats received from Facebook and the defendant admitted those are messages and photographs he exchanged with the minor victim. The defendant admitted to traveling to Kentucky to meet the victim and also driving the victim back to Missouri on two occasions. Det. Lucca brought up to the defendant that it was strange that the two were engaged, but she had not mentioned to the defendant that she was no longer enrolled in school and Joshi did not know where she was currently living. The defendant never told Det. Lucca that they were married or had a marriage ceremony. The interview remained non-confrontational, casual, and relaxed throughout the whole the interview.

      The defendant voluntarily signed multiple consent forms for the police to look at his cell

---

[3] The defendant's Facebook account was suspended at the beginning of October of 2018 because the child exploitive material he possessed on the account violated Facebook's terms and conditions. When the account was suspended, the defendant no longer had access to it.

phone, his digital devices, and to search his residence.

    C.  <u>Victim's Interview.</u>

Also on October 10, 2019, in Bowling Green, Kentucky, investigators were attempting to locate the victim. Investigators could not locate her in Bowling Green, they realized she had moved back to Corbin, Kentucky. The detectives got in the car and made the three hour drive to Corbin, Kentucky. Once in Corbin, they went to an address for the victim and her mother, but they were no longer living at that address. The police continued to investigate, checking several different addresses, before finally locating the victim at her new residence late in the evening of October 10, 2019.

The victim, M.D., was interviewed by Sgt. Oliver of the Kentucky State Police. M.D. stated to Sgt. Oliver that Patricia Dole was her mother and legal guardian, but not her biological mother. M.D. stated she is sixteen-years old and did not know why the police were at her home. M.D. explained to police that she just moved back to her mother's home in Corbin. She had been living in Bowling Green, Kentucky, with her sister. During this interview, M.D. at first told Sgt. Oliver that Ashu Joshi was just a friend, but later in the questioning, she admitted to being in a sexual relationship with the defendant. She did not say they are married or engaged.  M.D. stated that she used to babysit for the defendant and knows him through her mother.  M.D. stated that she went to St. Louis once to watch the defendant's baby. M.D. stated that her mom only gave them (defendant and herself) permission to talk. At first M.D. stated that she and the defendant had not had sex, but later stated that she is pregnant and it may be his baby.  M.D. was told that the defendant's Facebook account was shut down because of the images of child pornography of her on his account. M.D. admitted to sending and receiving the images in question on Facebook with the defendant.

4

D.  Criminal Proceedings.

A criminal complaint was filed against the defendant on October 11, 2019, in federal court, defendant was arrested by federal authorities, and the defendant was brought before Magistrate Judge David D. Noce.   On October 24, 2018, a Grand Jury indicted the defendant for the crimes of Production of Child Pornography, Interstate Transportation of a Minor, and Distribution of Child Pornography. Doc. #17.

The government received and served two valid federal search warrants on Facebook for evidence of crimes of child exploitation in this case. The search warrants for were for the Facebook account of the victim and the account of defendant.   Facebook complied and returned those results to the FBI.   Defendant withdrew his consent for law enforcement to search his cell phone and other computer devices on November 21, 2018. The FBI subsequently received a lawful federal search warrant for those devices.

A detention hearing was held in this matter on October 26, 2018. Doc. #24.   Before the hearing, the defendant filed a motion for pre-trial release, in which, he stated, "[h]e is not married." Doc. #21 at 4. The defendant proffered several exhibits and witnesses, including letters from former co-workers in Kentucky, but at no time did he say he was married to the victim. Further, the defendant's brother testified on behalf of the defendant and had no idea that his brother was engaged to a sixteen-year-old, nor did he know she was pregnant and the defendant's brother had never even met the victim. Doc. #24, Tr. at 65.

E.  Court Ordered Marriage.

Before November 22, 2019, there was no mention of a marriage between M.D. and the defendant and the defendant provided no documentation regarding a marriage.   When the case was indicted on October 24, 2018, M.D. and the defendant were not married.   On November 22,

5

2019, the defendant's pre-trial motions were due to the Court after numerous extensions of the deadline. The defendant filed three motions that morning. Attached to the motion to dismiss the indictment, Doc. #118, was a sealed court order that purported that the victim and the defendant are married.   This was the first time the government had received any indication that the victim and the defendant were married. The Court order references a marriage ceremony that occurred on June 23, 2018.   The government has be unable to find any evidence that a ceremony took place that day.   There were no witnesses, pictures, or any documentation.

On November 22, 2019, the government contacted the Knox County, Kentucky Courthouse to receive a copy of the court file from which the court ordered marriage stemmed. The government explained why it needed a copy of the file. The Judge in the marriage case filed a mutual restraining order against the parties on November 22, 2019.    The pleadings in the Court file reflect that the parties had a Hindu marriage ceremony on June 23, 2018, that was solemnized and consented to by the victim's guardian.   The victim's only legal guardian, Patricia Dole, was interviewed by an investigator on November 27, 2019.   Ms. Dole had no idea that the victim had become married, never consented to the marriage, and never heard about any ceremony happening on June 23, 2018.    The Bowling Green Hindu Temple was contacted by the FBI and they have stated they did not perform a marriage ceremony for Ashu Joshi. According to M.D.'s own statements in Court, there were no witnesses to the marriage.    The pleadings to the Court in Kentucky do not reveal that the respondent, M.D., was a minor, and allege falsely, that her legal guardian consented to the marriage.   See attached Ex. #1, 2, and 3.

### III. LEGAL ANALYSIS OF DISMISSAL ISSUES.

#### A.  There Is No Marriage Defense To Child Pornography Laws.

1. **Defendant fails to ascertain in his "as-applied" challenge how his conduct is constitutionally protected.**

The defendant alleges that the indictment should be dismissed because the charges are unconstitutional as applied, as the defendant and the minor child victim were married at the time of the offenses. There is no marriage defense to the crimes the defendant are charged with. *United States v. Buttercase*, No. 8:12CR425, 2014 WL 7331923, at *5 (D. Neb. Dec. 19, 2014). His conduct was illegal whether or not he was married at the time, and his "as-applied" constitutional challenge also fails because the acts committed, child pornography offenses, are not constitutionally protected.   In *Adams,* an as-applied challenge to the second amendment was raised and the Eighth Circuit Court of Appeals stated, "But a party who raises an as-applied constitutional challenge to a statute must show that the statute as applied in the particular circumstances of his case infringed on conduct that was constitutionally protected. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610-11, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *United States v. Raines*, 362 U.S. 17, 21-22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). In *Adams,* the Court found there are limits to constitutionally protected conduct, such as gun ownership. Here, the defendant tries to argue that his conduct is constitutionally protected, that conduct being production of child pornography, which is not protected by the Constitution, and, however even if it is protected, it can still be limited.

The defendant has failed to show that his conduct was constitutionally protected. Marriage might have protections under the law, but sexually exploiting a minor child is not constitutionally protected conduct. Even marriage rights can be limited, just like second amendment rights. The defendant fails to explain how the conduct he was engaged in, child pornography, is constitutionally protected. The Eighth Circuit has explicitly stated that sexually

7

explicit materials involving persons under the age of 18 enjoy no constitutional protections. *United States v. Wilson*, 565 F.3d 1059, 1067 (8th Cir. 2019).

In *Wilson*, the defendant attempted to make a similar constitutional law argument by stating that:

> Wilson's more colorable claim is that not allowing a reasonable-mistake-of-age defense to charges under section 2251(a) makes the statute overbroad, thereby chilling protected speech in violation of the First Amendment. "[S]ection 2251(a) ... does not, on its face, make reasonable mistake of age an affirmative defense." *United States v. United States Dist. Ct.,* 858 F.2d 534, 538 (9th Cir.1988). Nonetheless, Wilson urges that, absent such a defense, producers of pornography will be deterred from creating lawful materials that depict youthful-looking adult actors.
> Although the First Amendment protects non-obscene adult pornography, sexually explicit materials involving persons under the age of 18 enjoy no constitutional protection. *See New York v. Ferber,* 458 U.S. 747, 764, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Given the complete absence of free speech rights once one crosses this threshold, Wilson argues that strict liability under section 2251(a) will inhibit producers of adult pornography from engaging in protected speech.
> Producers of child pornography, unlike distributors and downstream consumers, are more akin to statutory rapists who are not entitled to any *mens rea* safeguards. *See X–Citement Video,* 513 U.S. at 72 n. 2, 115 S.Ct. 464 (comparing producers charged under section 2251 with statutory rapists and distinguishing both from distributors and recipients of child pornography charged under section 2252); *Morissette,* 342 U.S. at 251 n. 8, 72 S.Ct. 240 (noting that the common-law presumption in favor of *mens rea* did not apply to "sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent"). This exception to the presumption in favor of *mens rea* is a function of the fact that producers are in a better position to verify the age of the actors they employ. *X–Citement Video* at 76 n. 5, 115 S.Ct. 464 ("The difference in congressional intent with respect to § 2251 versus § 2252 reflects the reality that producers are more conveniently able to ascertain the age of performers. It thus makes sense to impose the risk of error on producers."). Thus, because producers may more confidently determine the age of their actors, their speech is less apt to be inhibited by the fear of mistake or deception.  *Id.* at 1067, 1068.

Therefore, child pornography images and acts are not afforded any constitutional protections and the defendant's first "as applied" challenge to the charges in the indictment fails.

The defendant cites, *Loving v. Virginia*, 388 U.S. 1, 12 (1967), in support of his argument. The *Loving* case, and others that followed it, have held that right to marry is

8

fundamental. However, the defendant's argument is misplaced, because the government is not preventing the defendant from marriage. Congress has made production of child pornography illegal, not marriage. Therefore, the *Loving* case analysis does not apply here.   The defendant then cites *Eisenstadt v. Baird,* 405 U.S. 438 (1972), which held that a statute prohibiting the distribution of contraceptives to single persons, but not married persons, violated the equal protection clause.   Here, the statute in question involves the distribution of child pornography, and it is illegal whether a person is married or not, so the equal protection clause is not an issue.

The defendant cites the First Amendment and attempts to say that it protects his child pornography actions in marriage, but again, there is no First Amendment protections for child pornography. The Courts have found that a person's First Amendment rights can be restricted for a compelling interest, and one of those compelling interest is protecting children. See *Osborne v. Ohio,* 495 U.S. 103, 112, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990), in which the Supreme Court found prohibitions of possessing child pornography complies with the First Amendment because the state has a compelling interest in protecting minors.

Therefore, there are no constitutional protections for the defendant's criminal conduct in this case.

   2. **The Indictment Should Not Be Dismissed Because the Charges Do Not Contain a Marriage Defense.**

There is no "marriage defense" to the federal crimes the defendant is charged with. The District Court in *Buttercase* discussed the crime of Sexual Exploitation of Children, Title 18 U.S.C. Section 2251, and pointed out,

> Finally, the search and seizure of Defendant's private videos did not violate his Fourth Amendment rights. Defendant concedes, solely for purposes of his motion to suppress, that some of the videos may have been made when Defendant's ex-wife was under the age of 18. Defendant asserts, however, that married couples are entitled to the

constitutionally protected right to privacy in the conduct of their intimate relations, and that the videos must be excluded as their seizure was an unconstitutional invasion of privacy. Defendant's argument finds no support in the law. Section 2251, under which Defendant is charged, does not make marriage a defense to the production of child pornography. 18 U.S.C. § 2251. The Eighth Circuit has declared that "sexually explicit materials involving persons under the age of 18 enjoy no constitutional protection." *United States v. Wilson,* 565 F.3d 1059, 1067 (8th Cir.2009). Therefore, Defendant's argument for suppression based on an alleged violation of his constitutional rights fails. *United States v. Buttercase,* No. 8:12CR425, 2014 WL 7331923, at *5 (D. Neb. Dec. 19, 2014).

Further, the law is not overbroad for not including a marriage exception. A similar argument was raised in the *Wilson* case, in which no exception for "mistake-of-age" was included. The Court noted, "'([T]he scope of the statute does not render it unconstitutional unless its over breadth is not only real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' (quotation omitted)). These two factors, combined with the strong interest the state has in protecting children from sexual exploitation, fatally undermine Wilson's First Amendment claim. Thus, we hold that the First Amendment does not require a reasonable-mistake-of-age defense to charges of producing child pornography in violation of section 2251(a)."

Also see the Fourth Circuit holding in *United States v. Matthews*, 209 F3d 338 (4th Cir. 2000). In that case, a journalist sent and received child pornography as part of research for a news story. The journalist contended that his acts were solely for a journalist purpose and that the First Amendment provided a defense to his criminal conduct. The Fourth Circuit disagreed and concluded that the First Amendment provided no defense for him.

"Matthews and his amici present powerful rhetoric urging that he (and anyone else asserting such a defense) be allowed to present this defense to a jury. Let the jury decide, they argue: if the jury concludes that Matthews traded in pornography solely for a proper purpose, then the First Amendment prevents conviction; if the jury concludes that he acted for another

purpose, then conviction is appropriate. The argument has visceral appeal. One of our bedrock principles is that every man deserves his day in court and the opportunity to have a jury consider his best defense. But the law does not permit a defendant to present a defense unless the law recognizes that defense. *See, e.g., United States v. Fuller,* 162 F.3d 256, 261 (4th Cir.1998), *cert. denied,* 528 U.S. 826, 120 S.Ct. 75, 145 L.Ed.2d 64 (1999); *United States v. King,* 126 F.3d 987, 995 (7th Cir.1997). And, notwithstanding the skill of Matthews' advocacy, *Ferber* does not provide the broad defense he seeks to raise in this case."  *Matthews* at 344. "[T]he government can ban child pornography even if not obscene. 458 U.S. at 764, 102 S.Ct. 3348. In other words, although the obscenity test for adult pornography contains the type of First Amendment defense that Matthews urges us to recognize, the *Ferber* Court unequivocally rejected such a defense in the context of child pornography offenses." *Matthews* at 345. Therefore, the Courts are continually unwillingly to extend a defense to these types of crimes and they continue to find that the child pornography laws are not overboard when they do not include exceptions to the conduct.

In addition, similarly, in *United States v. Stringer*, the Court found that though the minor child had been emancipated from her parents, that was also not a defense to child pornography offenses. 739 F.3d 391 (8th Cir. 2014).   "Stringer also challenges the district court's exclusion of evidence that G.R. was an emancipated person at the time the offenses were committed. The statute under which Stringer was convicted, 18 U.S.C. § 2251(a), prohibits using "any minor" with the intent that "such minor" engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct. Stringer argues that because G.R. was legally emancipated from her parents prior to engaging in the conduct at issue in the indictment, she was not a "minor" in the eyes of the law, and it was legally

11

impossible for Stringer to violate § 2251(a) through his interactions with her." *Id.* at 396. "We agree with the district court that G.R.'s previous marriage and emancipation are not legal defenses to a charge against Stringer under § 2251(a). The term "minor" is defined by 18 U.S.C. § 2256(1) as "any person under the age of eighteen years." Section 2256(1) provides no exception for emancipated persons. G.R. was a "minor" within the meaning of the statute, regardless of her emancipated status, and the district court acted within its discretion in concluding that evidence of emancipation would "confuse the jury and lend itself to perhaps a jury nullification issue." R. Doc. 113, at 19. There was no reversible error in the pretrial evidentiary ruling. *See* Fed.R.Evid. 401, 403." *Id.* at 396.

    The defendant cites that the First Amendment protects his child pornography actions in marriage, but again, there are no First Amendment protections for child pornography. The Courts have found that a person's First Amendment rights can be restricted for a compelling interest, and one of those compelling interest is protecting children.   There is no marriage defense to the crimes the defendant are charged with. His conduct was illegal whether or not he was married at the time.

    3. **The Defendant's Conduct Did Affect Interstate Commerce.**

The defendant argues that his conduct did not substantially affect interstate commerce because it was non-commercial in nature. First, the defendant used the internet, which is a means and facility of interstate to distribute, receive, and produce the images of child pornography.   Congress has the power and authority under the Commerce Clause to punish those who transport, receive, and possess files of child pornography over the internet or on devices that move in interstate commerce.   "The defendant's position is contrary to abundant binding precedent that Congress had authority under the Commerce Clause to enact Sections

2252A(a)(2) and 2252A(a)(5)(B).  *United States v. Mugan*, 441 F.3d 622, 630 (8th Cir. 2006); *United States v. Hampton*, 260 F.3d 832, 834-35 (8th Cir. 2001); *United States v. Bausch,* 140 F.3d 739, 740 (8th Cir. 1998)."  *United States v. MacEwan*, 445 F.3d 237, 243-44 (3d Cir. 2006).

In *MacEwa*n, the court explained that the internet is an instrumentality and channel of interstate commerce.  Further, the court noted that the "transmission of photographs by means of the Internet is tantamount to moving photographs across state lines and thus constitutes transportation in interstate commerce."  *Id*. at 244 (quoting *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002)).

The *MacEwan* Court held that Congress has the power to regulate the downloading of child pornography from the internet as the Commerce Clause has given Congress that power.  Because the internet is an instrumentality and channel of interstate commerce, the transporting and downloading of images from the internet satisfies the jurisdictional element of § 2252A(a)(2).  *See also United States v. Kimler*, 335 F.3d 1132, 1138 n. 7 (10th Cir. 2003), (defendant's activity "would still be interstate if, as the evidence at trial established, he sent and received the images in interstate commerce over the internet").

Secondly, it does not matter that the defendant's individual actions may not have commercially affected interstate commerce. The First Circuit Court of Appeals discussed this at length in *United States v. Morales-de Jesus,* "[h]owever, that 'apparent commercial character' does not depend on any intent by an individual defendant involved in the illegal conduct to introduce the proscribed visual depictions into commerce. In *Lopez* and *Morrison,* the Supreme Court discussed the type of activity broadly—as defined in the statute—when determining whether the regulated conduct was commercial or economic, and when discussing

13

the attenuation of the link between the regulated activity and a substantial effect on interstate commerce. For example, *Lopez* focused on the fact that the GFSZA "is a criminal statute that *by its terms* has nothing to do with 'commerce' or any sort of economic enterprise, however broadly those terms are defined." *Lopez,* 514 U.S. at 549, 115 S.Ct. 1624 (emphasis added). . . . Likewise, in *Morrison,* the Court spoke of "gender-motived violence" generally, not the defendants' alleged rape of their college classmate. *Morrison,* 529 U.S. at 615, 120 S.Ct. 1740. *Lopez* and *Morrison* demand that the general subject of the statute, not the defendant's individual activity, be economic in nature to justify aggregation under *Wickard.*" *United States v. Morales-de Jesus*, 372 F.3d 6, 19 (1st Cir. 2004).

Therefore, the question is whether Congress can regulate the activity, not whether the defendant's individual conduct was commercial in nature.  As long as, the overall activity criminalized by Congress affected interstate commerce and can generally be economic nature is enough.  Also see *United States Holston, 343 F.3d 83 (*2nd Cir. 2003) which held that it does not matter if the defendant had no intention of the placing the visual depiction in the national market.  "Where, as here, " 'a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence.' " *Lopez,* 514 U.S. at 558, 115 S.Ct. 1624 … § 2251(a) lies within Congress's powers under the Commerce Clause, the fact that Holston neither shipped the materials interstate nor intended to benefit commercially from his conduct is of no moment." *Id. at 91*. Thus, based on the abundantly clear case law on this issue, the defendant's individual conduct can still be criminalized under these federal statutes even if he did not individually have a commercial nature to his individual actions.

   4. **Whether the Child Pornography Photographs in this Case were Taken for the Purpose of Producing Child Pornography Is a Question for the Trier of Fact.**

14

The defendant attempts to argue that the photographs taken were not for the purpose of producing child pornography and instead were taken to memorialize a relationship.

Based upon the evidence contained in the Facebook chats, the material was not produced to memorialize a relationship.  For example, on August 28th at 8:57 the defendant wrote to the victim, "I need you to be completely helpless.  And unable to protect your cunt from me and my dick." He later writes to her, "Show me your fuck hole." "Open up your pussy lips and show me the fucking hole." Victim then responds by sending the defendant images of child pornography at 9:04 p.m. Tr. Bond Hearing, October 26, 2018 at 15, 16, 17, Doc. #24, 48.  Therefore, the government has evidence to present to the jury that the photographs were taken for the purpose of producing child pornography.

Further, this question is really a factual question, and thus, should ultimately rest with the trier of fact at the trial.  "Rule 12(b), Federal Rules of Criminal Procedure, allows our consideration at this pretrial stage, of any defense "which is capable of determination without the trial of the general issue." To withstand a Motion to Dismiss, an Indictment must allege that the Defendant performed acts which, if proven, would constitute a violation of the law for which he has been charged. *United States v. Polychron,* 841 F.2d 833, 834 (8th Cir.1988), cert. denied, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988)." *United States v. Finn*, 919 F.Supp. 1305 at 1339 (D.Minn. 1995).  The defendant's purpose behind the crime is a question for the trier of fact, as a general trial issue, not a reason to dismiss the indictment.

"A motion for the dismissal of a Count in an Indictment may be brought at any time pursuant to Rule 12(b)(2), Federal Rules of Criminal Procedure. In reviewing the sufficiency of an Indictment, or of any of its Counts, we are to determine whether the Indictment sufficiently sets forth the elements of the offenses alleged, whether it places the Defendant on fair notice of

15

the charges against him, and whether it enables the Defendant to assert an acquittal or conviction so as to invoke his privilege against double jeopardy for a single offense. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. Morris,* 18 F.3d 562 (8th Cir.1994); *United States v. Staggs,* 881 F.2d 1527, 1530 (10th Cir.1989), cert. denied, 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990)." *Id.* at 1343.

In determining whether an Indictment has sufficiently set forth the elements of the offense charged, the Indictment will generally be deemed sufficient "unless no reasonable construction can be said to charge the offense." *United States v. Morris,* supra at 568, quoting *United States v. Peterson,* 867 F.2d 1110, 1114 (8th Cir.1989). In making this assessment, we must accept the allegations of the Indictment as true. *United States v. Barker Steel Co., Inc.,* 985 F.2d 1123, 1125 (1st Cir.1993); *United States v. Cadillac Overall Supply Co.,* 568 F.2d 1078, 1082 (5th Cir.1978), cert. denied, 437 U.S. 903, 98 S.Ct. 3088, 57 L.Ed.2d 1133 (1978). *Id*. at 1343.   Therefore, since the defendant is not challenging the sufficiency of the count in the indictment, but rather the facts surrounding an element of the crime, it is an improper motion to dismiss.   Questions of fact are to be left to the trier of fact and not to be decided during the pre-trial motion stage. Fed.R.Crim.P. 12(b) provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. "As the language of the rule indicates, when the issue raised involves a question that may not be determined without "trial of the general issue" it is not proper for decision by pretrial motion. The "general issue" has been defined as evidence relevant to the question of guilt or innocence." *United States v. Barletta,* 644 F.2d 50, 58 (1st Cir.1981).   To summarize, "[i]f a pretrial claim is 'substantially founded upon and intertwined with' evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of

16

fact and must be deferred." *United States v. Shortt Accountancy Corp.,* 785 F.2d 1448, 1452 (9th Cir.) (quoting *United States v. Williams,* 644 F.2d 950, 952–53 (2d Cir.1981)), *cert. denied,* 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). The defendant's motion to dismiss Count One in the Indictment should not be sustained.

   5. **The defendant did transport the minor across state lines to engage in criminal sexual activity and what the defendant's intentions were should be left to the jury.**

The defendant argues that Count II of the indictment should be dismissed because he did not transfer the minor across state lines with the intent to engage in criminal sexual activity. The defendant confessed during his interview with Det. Lucca that the defendant admitted to driving the victim to Missouri from Kentucky in April and while in Missouri, the minor female victim performed oral sex on him, in violation of state law.   The defendant also told Det. Lucca that in July (of 2018) he met the minor female child victim in Evansville, Illinois and drove her to St. Louis, Missouri. They got to his home late at night, she only stayed with him one night and they had oral sex in Missouri that night, which was illegal, and then he drove her back to Kentucky the next day.   Therefore, there is evidence that the intent to bring the victim to Missouri was to engage in criminal sexual contact and that count should not be dismissed. Also, the defendant is again raising a factual question, one for the jury to decide, not a question for a pre-trial motion to dismiss. Questions of fact are to be left to the trier of fact and not to be decided during the pre-trial motion stage. "As the language of the rule indicates, when the issue raised involves a question that may not be determined without "trial of the general issue" it is not proper for decision by pretrial motion. The "general issue" has been defined as evidence relevant to the question of guilt or innocence." *United States v. Barletta,* 644 F.2d 50, 58 (1st Cir.1981).   This defendant's argument as why the defendant transported the victim in

17

interstate commerce is premature and a question for the trier of fact.   It should not be sustained.

### B. The Defendant and the Victim Are Not Married.

Throughout the course of their motion to dismiss the indictment, the defendant alleged that he and the minor child victim are married. While the defendant procured an Order from a Court in Kentucky validating a marriage between himself and the victim, there was not marriage to validate, thus, the marriage is not valid.   From the time the case was first investigated until November 22, 2019, there was no mention to any investigator, pre-trial service officer, or the Court dealing with this criminal case that the parties were married. Since the issuance of the case, there have been several Court hearings, including one in which the defendant sought to see the victim's child, and he never raised that he was married to the victim, even though it would have been relevant to do so, if it were in fact true. See Doc. #24, 82 and Transcripts, #48, 145. The pleadings filed in the case in Kentucky, show that the defendant is relying on a marriage ceremony that he claimed occurred on June 23, 2018.   The pleadings filed by the defendant and the victim do not tell the Court in Kentucky that M.D. is a minor, that she did not have her legal guardian's consent to marry[4], that she would have been only sixteen (16) at the time of the marriage ceremony, and that there was a pending criminal case against the defendant in which court had ordered him to have "no contact" with her. See exhibits, #1, 2, and 3. The defendant and the minor victim have never lived together in the same, nor even lived in the same state.   They never held themselves out to be married to the public.   There is no evidence of a marriage ceremony occurring on June 23, 2018, which is required for the Court Ordered Marriage to be valid.   Therefore, in addition to the responses

---

[4] The pleadings in the Kentucky Court case, actually contain a falsehood that M.D.'s guardian had consented the marriage.

18

the government has provided above, it is also the government's position that the defendant and victim are not married and therefore, the defendant's arguments regarding a "marriage defense" are moot.

## IV.     CONCLUSION

The defendant's motion to dismiss the indictment should be denied. Many of the arguments raised by the defendant are factual issues that are to be left for the trier of fact. Courts across the country have consistently found that there is no constitutional protection or exception to the crimes possession or production of child pornography. For the reasons stated above, the defendant's motion to dismiss the indictment should not be sustained.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*s/ Colleen C. Lang*
Colleen C. Lang, #56872MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, MO 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by email to counsel of record.

*s/ Colleen C. Lang*
Colleen C. Lang, #56872MO
Assistant United States Attorney