UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CR 876 JAR / NCC |
| | ) | |
| ASHU JOSHI, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before the Court on the motions of the United States to revoke the pretrial release of defendant Ashu Joshi (Docs. 131 and 225) and the Petition for Action on Conditions of Pretrial Release, filed by the Pretrial Services Officer on March 9, 2020 (Doc. 223). Several hearings were held.

The issues before the Court involve only whether defendant violated the conditions of pretrial release the Court ordered and, if so, whether as a consequence defendant ought to be detained. *See* 18 U.S.C. § 3148(b). The Court makes no determination on any of the issues that relate solely to the government's case for conviction or to the defendant's arguments for dismissal of the case. *See* 18 U.S.C. § 3142(j) (nothing in the Bail Reform Act detracts from the presumption of defendant's innocence).

Defendant is alleged to have violated the condition of his pretrial release that he not have contact with the alleged victim in the case, by indirectly contacting the victim about matters related to the ultimate issues of guilt or innocence. In its supplemental motion, described below, certain of defendant's actions are argued to be a violation of federal criminal law, 18 U.S.C. § 1512(b) (tampering with a witness). In this context, the Bail Reform Act of 1984 provides the following:

> The judicial officer shall enter an order of revocation and detention, if, after a hearing, the judicial officer ---
> (1)  finds that there is ---
>   (A)  probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>   (B)  clear and convincing evidence that the person has violated any other condition of release; and

  (2) finds that ---
   (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
   (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b).

On October 24, 2018, the grand jury returned an indictment charging defendant with production of child pornography, in violation of 18 U.S.C. § 2251(e) (Count 1); transporting a minor (MD[1]) ("victim") from Kentucky to this judicial district with the intent that the minor engage in sexual activity which would be a violation of Missouri law, in violation of 18 U.S.C. § 2423(a) (Count 2); and distributing child pornography over the internet, in violation of 18 U.S.C. § 2252A(a)(2) (Count 3).  All three counts are alleged to have occurred between March 1 and October 10, 2018.  (Doc. 17.) [2]

## Original Detention Hearing

On October 26, 2018, a detention hearing was held on the government's motion.  During the hearing, the Court heard the testimony of two witnesses for the government and two witnesses for the defense.  One of the defense witnesses was Judy Ulrich, who testified she is employed by a medical clinic in London, Kentucky, as the office manager.  Before that, she worked for defendant for 12 years as his office manager; she did not work with him during the period charged in the indictment.  During the time she knew defendant in Kentucky, defendant was a physician practitioner of internal medicine with clientele of all ages.  Ms. Ulrich had met defendant's two-and-a-half year old daughter by his prior marriage.  She believed defendant moved to St. Louis in 2016.  She also testified that, if defendant was released on bond, she would have frequent contact with him, if that was allowed.  She testified she would help be sure he complied with conditions of release, stating "whatever I could do."

---

[1] The government has proffered that when the alleged offenses occurred, victim was "an economically-deprived 16-year-old girl who resides in rural Kentucky."  (Doc. 75 at 3.)

[2] On January 29, 2020, the grand jury returned a superseding indictment.  In it, the grand jury added as Count 4 the charge that between August 18 and October 10, 2018, defendant received videos and images of child pornography over the internet.  (Doc. 202.)

**Conditions of Release Imposed On November 9 and 16, 2018**

After post-hearing briefing, the Court on November 9, 2018, denied the government's motions for detention and ordered conditions of pretrial release. The Order Setting Conditions of Release made the following findings, conclusions, and conditions of release:

> Defendant Ashu Joshi is 46 years of age. He was born in India, graduated from medical school there, completed his medical residency in the United States in 2000, and became a naturalized citizen in 2009. He resides with his mother in this judicial district. He has been gainfully employed as a physician in the St. Louis area. Prior to his arrest in this case, he had no criminal record.
>
> Defendant has rebutted the statutory presumption for detention for the following reasons. As stated, he has been gainfully employed in this district. He has a brother who resides in Kansas and a former spouse and a daughter who reside in Kentucky. He resides with his mother, who does not speak English, in this district. Other than this case he has no criminal record. While he has traveled outside the United States, defendant can be required to surrender his passport to the Court. He has the support of his family and members of the community. There is no evidence of substance abuse. The record of the evidentiary hearing indicates that, after his arrest, defendant cooperated with law enforcement entirely. There is no indication in the record that defendant resisted arrest in this case. The government's investigation did not involve any indication that, if released, defendant would likely flee to avoid prosecution, destroy evidence, or obstruct justice. Defendant is very much involved in the Hindu religion and he is very active in his temple.
>
> Based upon this record, including the facts set forth in the bail report, the evidence adduced during the detention hearing, and the statements of counsel, the court finds and concludes that the release of defendant ASHU JOSHI upon the conditions of release set forth below will reasonably protect the public and will reasonably assure his appearance in court as required. 18 U.S.C. § 3142(b), (c).
>
> \* \* \*
>
> [The Court ordered the following conditions of release for defendant:]
>
> 1. Defendant, his brother, his mother, and an unrelated resident of this judicial district, must sign an appearance bond in the sum of $100,000.00, secured by a deposit of $10,000.00 with the registry of the Court.
> 2. Defendant must submit to the supervision of the Pretrial Services Office.
> 3. Defendant must reside with his mother.
> 4. Defendant must remain in the Eastern District of Missouri.
> 5. Defendant must have no contact with the alleged victim, except under circumstances approved in advance by the Pretrial Services Office.
> 6. Defendant must have no access to social media by any means.

>       7. Defendant must submit to a curfew as directed by the Pretrial Services Office.
>       8. Defendant must submit to location monitoring with a GPS bracelet or other device as directed by the Pretrial Services Office.
>       9. Defendant may have no contact with anyone under the age of 18 without adult supervision.
>       10. Defendant must defray the cost of a certified Indian language interpreter who will be used by the Pretrial Services Office when interviewing defendant's mother on a regular basis to assure that defendant is complying with his conditions of pretrial release.
>       11. Defendant must submit to any other condition of release ordered by the Court, including those prescribed for charges of this nature.

(Doc. 42.)  The formal Order Setting Conditions of Release, which defendant signed on November 15, 2018 (Doc. 46), did not include condition No. 5, set out in the Court's order filed on November 9, 2018.  *See* Doc. 46 at 2.  This oversight was corrected on November 16, 2018, when the Court sustained the petition of the Pretrial Services Office and added the condition that defendant "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution."  (Doc. 49.)

## Conditions of Release Imposed On January 9, 2019

On January 9, 2019, after a hearing, the Court granted the motion of defendant for a modification of the conditions of pretrial release to allow him to acquire a computer with internet access only for the purposes of a specific employment opportunity.  Relevant to the matter before the Court, the following conditions of release were ordered:

>       *3.   Defendant may not directly or indirectly contact the victim alleged in the pending charges.*
>                              * * *
>       *6.   Defendant must comply with all other conditions of release imposed on him.*

(Doc. 63) (emphasis added).

## Denial of Request for Modification of Conditions of Release

On March 29, 2019, victim filed a *pro se* handwritten motion for the Court to remove the condition of release that defendant have no contact with victim so that he could be present when

their son was born.  (Doc. 70 sealed.)  A formal motion to the same effect was filed by defendant's counsel on April 1, 2019.  (Doc. 72.)

Following a hearing on May 13, 2019, the Court denied these motions.  In so ruling, the Court stated:

> The alleged victim in this case has taken a position different from victims in most criminal cases.  She has expressed interests contrary to those expressed by the government in the indictment and in its prosecution of this case.  The victim here clearly has aligned herself with defendant.  She seeks leave of the Court to allow defendant to have close contact, both physical and financial, with her and her new baby.  As stated, the government is vehemently opposed to the relief the victim and the defendant seek, because it believes such contact would jeopardize the wellbeing of the victim.
>
> ***The Court denies the motions for modification of defendant's conditions of release in order to maintain the status quo of the various competing interests in the case. The integrity of the judicial process predominates over these interests. The federal grand jury found probable cause to believe defendant, much older than victim, took advantage of victim in the commission of federal criminal activity. The victim in this case remains a minor, albeit now the mother of an infant. The alleged victim may herself be a witness in the case, whether called by the government or by the defendant. It is very important that the alleged victim's testimony not be burdened by the very substantial contact that she and the defendant seek.***  While the victim and child are economically deprived, the victim's stepmother, who is looking after the victim and the baby, is opposed to the defendant being allowed to have the contacts that he and the victim seek.  There apparently is some factual indication that defendant is not the baby's father, although this is disputed.  There is no third-party, governmental or otherwise, that could administer the payment by defendant of financial child support.  The Court has determined to maintain the current positions of the government, the defendant, and the victim and baby in this case for the pretrial period.

 (Doc. 94) (emphasis added).

### Government's Motion for Revocation

On December 2, 2019, the government filed its first motion for revocation of defendant's pretrial release.  (Doc. 131.)  It stated that the government had concerns that defendant violated the conditions of release by contacting the victim.  (*Id.* at 1-2.)  More specifically, the government recounts allegations from the original complaint in this case; states that victim is represented by an attorney recommended to her by defendant's counsel; and states that the victim and her attorney were advocating for an outcome of the case consistent with the defense.  The

government's motion describes an October 2018 government interview of the victim and her legal guardian and a later conference of the defendant and his counsel with government counsel.  The government alleges that a November 2019 Kentucky state court order finding that defendant and the victim are married is unlawful, that the defendant perjured himself before the Kentucky state court regarding whether he and the victim were married, and that the asserted marriage of the defendant and the victim is fraudulent.  (Doc. 131.)

A hearing on this motion was set for December 13, 2019.  The December 4, 2019 motion of the government to continue the hearing was sustained and the hearing was reset to January 3, and then by agreement of counsel, to January 10, 2020.

## Victim's Motions for Child Support

During the pendency of the government's motion for revocation of defendant's release, the victim, through counsel, moved on January 7, 2020, for modification of defendant's conditions of release to allow him to pay child support to the victim for the support of their child, as required by a Kentucky state court order.  Also on January 7, an amended motion for back child support payments to be paid in one lump sum was filed.  (Docs. 166, 168.)

## January 10, 2020, Hearing on Pending Matters

### Conditions of Release Modified for Payment of Child Support

On January 10, 2020, a hearing on the pending motions was held.  Two topics were dealt with.  First, with respect to the victim's motions for defendant to be able to pay child support, defendant's paternity of victim's child had been supported by a laboratory relationship report, dated October 28, 2019, based on DNA collected from victim and her child on October 18, 2019, and from defendant on October 23, 2019, that defendant is 99.99% likely to be the father of victim's child.  (Doc. 120.)   It was not disputed during the hearing that defendant is the father of victim's child and that the victim needed financial support for herself and the child.   During the hearing, counsel for the government had no objection to the defendant paying the child support monies to the victim as requested, so long as the defendant did not violate any condition of release.  (Doc. 195 at 1.)

On January 22, 2020, after consultation with counsel, the Court ordered that (1) defendant may begin paying child support in an amount not less than that ordered by the Kentucky court,

6

beginning in January 2020; (2) defendant may have contact visits with the child in the presence of an independent supervisor, but not in the presence of victim; (3) for the benefit of the child, defendant and the victim may have digital texting or email conversations immediately preceding and immediately after defendant's visit with the child, ***only about the welfare of the child and not otherwise about the case;*** and (4) the Pretrial Services Office is authorized to contact counsel for defendant or counsel for victim, or to otherwise act to determine whether the defendant's conditions of release are being complied with. Although the Order did not expressly so state, nothing in the Order *required* defendant to engage in these activities; they were being permitted by the Court within the conditions of release imposed on defendant.     (Doc. 195.)

### Evidence Regarding Violation of No-Contact Conditions

Second, evidence was also received by the Court on the government's motion for revocation of release.  The record establishes by clear and convincing evidence that defendant through Kentucky legal counsel and victim without counsel initiated a Kentucky state court case that resulted in an Order that was issued by the Knox County, Kentucky, Circuit Court, Family Court Division, in Case No. 19-CI-372.  That Order recognized the marriage of defendant and victim.   The relevant state court documents in that case include:

a. The Petition for Declaration of Paternity, Custody, Visitation and Child Support, filed on October 1, 2019, by defendant through his attorney in Kentucky, Jennifer S. Nicholson. The petition was signed by defendant on August 22, 2019.  (Gov. Hearing Ex. 1, Motion Ex. 2, Doc. 131-2.)

b. A document captioned, "Answer and Waiver of Service of Process and Entry of Appearance and Notice of Motion to Submit and Notice of Final Hearing," was filed on October 7, 2019, on victim's behalf, having been signed by victim on October 2, 2019.  The document is noted as having been prepared by defendant's attorney Jennifer S. Nicholson.   (Gov. Hearing Ex. 2; Motion Ex. 3, Doc. 131-3.)

c. A document captioned, "Motion for Order Recognizing Marriage as Legal," was filed on November 7, 2019.  The substantive body of the document was signed by victim expressly in a *pro se* capacity without her having legal representation.   The victim also signed the document a second time expressly *pro se* at its end, certifying that the original document was submitted to the state court and that a true and correct copy was submitted to attorney Nicholson

on November 7, 2019.  (Gov. Hearing Ex. 3, Motion Ex. 4, Doc. 131-4.)  To this Court's physical examination, this state court motion document appears to have been prepared in a fashion identical to victim's answer to defendant's petition, which was prepared by defendant's Kentucky attorney.

On November 8, 2019, a hearing was held in the Kentucky state court on the victim's Motion for Order Recognizing Marriage as Legal.  The undersigned has reviewed the video recording and a written transcript of that proceeding.  (Gov. Ex. 5 video CD.)  In that hearing, attorney Nicholson appeared, as did victim who appeared *pro se* and with her child.  In the hearing, attorney Nicholson presented the case for the victim's motion for the legality of the marriage, and stated that defendant agreed to recognize the marriage with victim.  Even though the case originated with defendant's Petition, attorney Nicholson advised the court that the state statute required that the determination of the legitimacy of the marriage had to be initiated by the victim's motion.  In that proceeding, the judge inquired about the occurrence of the wedding event.  Attorney Nicholson directed the question to victim who responded.  The judge asked attorney Nicholson whether she could provide the court with a proposed Order.  She agreed to do so and to fax a copy of the proposed Order to the court later that same day.  They discussed when the judge would be provided the proposed document, whether on Monday, a holiday, when he would be in his office in London, Kentucky, or on Wednesday when he would hold court in the present location.  When the judge mentioned Wednesday, victim asked what that date would be.  When the judge told her it would be the 13th day of the month, he also asked, "Is that soon enough?"  Victim stated, "No.  We're on a bit of a time limit. . .  So um, we, I, I need to get this done before the 12th for our federal case."  The judge agreed to review the document that attorney Nicholson agreed to provide to the court that day.  The judge stated he would decide the matter one way or the other on Monday and notify Ms. Nicholson when he did.  (Hearing Ex. 5 DVD, Docs. 160, 175; Trans. of Hearing, Doc. 175-4.)

The family court judge signed the Order on November 8, 2019.  In that Order, the state court sustained victim's motion and expressly stated that the marriage between Ashu Joshi and victim on June 23, 2018 is "Legal" and "a valid marriage."  (Doc. 119 at 1-2.)  At the conclusion of the Order, the state court stated, "as of June 23, 2018 the parties are deemed married."  The filed Order bears the annotation that it was distributed to attorney Jennifer S. Nicholson of London, Kentucky, and to victim.  (*Id.* at 2.)

## Motions of Victim for Clarification

On January 14, 2020, counsel for the victim moved for a hearing to clarify the terms of visitation and child support.   (Doc. 182.)   A hearing on the motion was held on January 21, 2020, and ruled in the record of the hearing.

On February 13, 2020, counsel for victim moved for an amendment of the conditions of defendant's pretrial release regarding the movement of the child of defendant and the victim. (Doc. 214.)   On February 14, 2020, a hearing was set for February 21, 2020, on the motion.

On February 21, 2020, the Court ordered that counsel for the victim and counsel for defendant to confer regarding defendant's visitation privileges with his and the victim's child. *Further, it was ordered that "defendant and Victim may communicate directly (with monitoring by the Pretrial Services Office) at times other than immediately before and immediately after visitations about items needed by Victim for the welfare of the child.   Thereafter, defendant may provide funds by check through counsel to Victim for the welfare of the child."*   (Doc. 220) (italics added).

## Petition of Pretrial Services Officer and
## Government's Supplemental Motion for Revocation

On March 9, 2020, the Pretrial Services Officer filed a Petition for Action on Conditions of Pretrial Release.   In the petition, the Officer alleged the United States Attorney's Office asserted that the defendant has attempted or has had actual indirect contact with the victim through a woman named "Judy" and through the victim's attorney.   The allegations were elaborated on in an accompanying letter to the Court.   Upon this petition, a warrant was ordered by the Court.   (Doc. 223.)    Defendant was arrested on the petition on March 9, 2020, and has remained in custody since that date.

Also on March 9, 2020, the government filed a supplemental motion to revoke release.   In the motion, the government alleged that defendant attempted to communicate with the victim, not about the welfare of their child as had been authorized, but about the criminal prosecution against him.  Defendant allegedly did this by telling the victim's attorney to advise the victim that she needed to change her name and by the attorney giving the victim a package of noodles.   The motion also alleged that the defendant through a friend in Kentucky communicated with the victim

in a manner that would affect the victim's testimony and regarding a false marriage ceremony in Kentucky.   (Doc. 225.)

A hearing on the pending matters was held on March 11, 2020.  From the evidence adduced at this hearing, the Court finds the following facts by clear and convincing evidence:

1. During the period July to August, 2019, Judy Ulrich, who had testified at the original detention hearing to the close relationship between her and defendant, contacted victim on several occasions at the restaurant where victim worked in Kentucky.  During the first of the meetings, Ulrich approached victim as she worked at the restaurant hostess station.  Ulrich called her by name, introduced herself, and said there was someone, naming defendant, that they have in common, who was near and dear to them.  Ulrich told her that defendant still loves her and wants her to be strong.  During these meetings, Ulrich gave victim amounts of cash (in varying amounts, *e.g.,* $100, $200, $300), clothing, and a cell phone (which victim no longer has), which victim believed were from defendant.  In two or three of these meetings Ulrich gave her details with which to describe the asserted marriage. Ulrich told victim that she had been in contact with defendant and that the gifts and the marriage details were from him.  One meeting that involved the discussion of the wedding details occurred at Rotary Park, in Corbin, Kentucky, during which Ulrich held victim's baby.  (Gov. Ex. 2 photo.)  Wedding ceremony details suggested by Ulrich involved a Hindu idol that supposedly was part of their wedding ceremony, a vermillion powder used for such ceremonies, and defendant reciting a Hindu prayer.  On one occasion, Ulrich gave victim a toy saucer (Gov. Ex. 1 photo) that had belonged to defendant's older daughter before she outgrew it.   Ulrich told victim that defendant wanted her to have the toy.

2. Regarding the Kentucky court case documents, victim told the United States Attorney's investigator that she had received a phone call from defendant's Kentucky attorney, Jennifer Nicholson.   Victim said that the attorney asked her if she wanted to sign paperwork the attorney had put together.   Victim said she told the attorney that she would do so.   Victim told the investigator she signed the documents voluntarily in a meeting with the attorney.

3. Victim told the investigator that during 2020 defendant contacted victim through victim's counsel.  This happened during the period the Court allowed supervised visits by defendant with the victim's child, with the involvement of victim's counsel.   During one such visit victim's attorney brought back to her items for her son from defendant.  One of the items was a box of noodles that victim immediately recognized as something directed specifically to her.   She

10

had previously eaten those noodles in Kentucky. She felt the gift of these noodles was directed to her by defendant.

4. On another occasion, defendant spoke to victim's counsel in the mudroom of his house and, when the baby's independent visit supervisor was not nearby, asked victim's counsel to tell victim to change her last name to Joshi and to ask her why she had not done so yet.

On March 19, 2020, defendant filed a written proffer of information that defendant was needed at home to care for his elderly mother. (Doc. 236.)

## **DISCUSSION**

Beginning in November 2018, defendant was prohibited as a condition of release from having any contact, directly or indirectly with victim. That condition was restated by the Court on January 9, 2019. In the latter order, the Court expressly stated that the condition was intended to maintain the *status quo* of the interests of the parties and the Court for a just disposition of the case without the influence of contact between defendant and victim during the pretrial period.

On January 22, 2020, the Court modified the conditions of release for the benefit of the victim's child to allow defendant an opportunity to visit with the child under controlled circumstances, and in connection with those controlled visits for defendant to communicate directly with victim solely for the benefit of the child. Throughout the case, defendant was never allowed by the Court to communicate with victim, directly or indirectly, otherwise about the case.

Relating to 18 U.S.C. § 3148(b), on the record before it, the Court does not find probable cause to believe defendant committed a violation of 18 U.S.C. § 1512, tampering with a witness, as argued by the government. In order to commit this offense a perpetrator must use intimidation, threaten, or corruptly persuade another to influence testimony, or attempt to do so. 18 U.S.C. § 1512(b); *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703-07 (2005) (ruling consciousness of wrongdoing an essential element of offense). The present record is insufficient for the Court to conclude that defendant acted with the state of mind required for a violation of § 1512(b). But there is a distinction between violating § 1512(b) and violating the no-case-contact condition of pretrial release imposed by the Court.

The Court finds clearly established that defendant violated the no-case-contact condition of his release by communicating indirectly with victim about matters directly related to the government's case against him and to his defense, in the following ways:

11

(1) During the summer of 2019, defendant caused Judy Ulrich to contact victim on several occasions and to give her money, clothes, and a cell phone; and she advised victim about how to provide details of the asserted Hindu wedding ceremony.[3] The Court is persuaded that the actions of Ms. Ulrich were caused by defendant not only by the content of the communications, stating details that might be found in a Hindu wedding ceremony, but also by the gift of the toy dish that had belonged to defendant's daughter.

(2) In October 2019, defendant caused his Kentucky attorney, Jennifer Nicholson, to directly contact victim and speak with her about signing papers to be filed in the Kentucky state court.

(3) In October 2019, defendant directly signed and through attorney Nicholson filed the Petition for Declaration of Paternity, Custody, Visitation and Child Support in the Kentucky state court, thus opening the state court case. The paramount purpose of this document was realized when the state court judge issued the Order recognizing and validating the asserted marriage of defendant and victim. In making this finding, the Court does not in any way indicate whether or not the state court proceedings were in any way fraudulent or untrue or whether or not the asserted June 23, 2018, wedding ceremony occurred. The sole issue before the Court is factual, *i.e.*, whether defendant contacted victim directly or indirectly in violation of the no-case-related contact condition of release. The Court finds that such contact occurred.

(4) In October 2019, defendant directly caused his Kentucky attorney to obtain victim's signatures on the Answer and the Motion documents that victim filed in response to defendant's Petition in the state court case.

(5) In October 2019, defendant caused his counsel in Kentucky to represent him in the Kentucky court hearing proceedings, and in those proceedings the attorney directly communicated with victim.

(6) In March 2020, defendant himself communicated with victim through her attorney about a case defensive strategy, *i.e.*, that victim should change her name to his. He also communicated with victim through her attorney by giving the attorney items for victim.

Upon the record before it, the Court further finds and concludes that defendant is unlikely to abide by any condition of release that would prohibit him from contacting victim. 18 U.S.C. § 3148(b)(2)(B).

---

[3] As stated above, no finding or conclusion stated by the Court in this Memorandum and Order opines in any way about whether a wedding ceremony did or did not occur. That determination is irrelevant to whether or not defendant violated the no-contact condition of release.

Therefore,

**IT IS HEREBY ORDERED** that the motions of the United States for the revocation of the pretrial release of defendant Ashu Joshi (Docs. 131 and 225) and the Petition for Action on Conditions of Pretrial Release, filed by the Pretrial Services Officer (Doc. 223) a**re sustained.** The pretrial release of defendant is revoked.   Defendant is committed to the custody of the United States Marshals Service until further order.

**IT IS FURTHER ORDERED** that defendant be confined in a corrections facility, separate, to the extent practicable, from persons awaiting trial, serving sentences, or being held in custody pending appeal.

**IT IS FURTHER ORDERED** that defendant be allowed reasonable opportunity for consultation with counsel.

**IT IS FURTHER ORDERED** that on order of a court of the United States or on request of an attorney for the United States, the person in charge of the corrections facility in which defendant is confined must deliver defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

        **/S/    David D. Noce**
        **UNITED STATES MAGISTRATE JUDGE**

Filed on May 15, 2020.